IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| BARBARA JANE FRECK, GLORIA ROBINSON, JALEEZA OWENS, LYNN MUSERELLI, PAUL CAPELLO, JIM HELTON, and JOSHUA CLARK individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) | Civil Action No. 4:20-cv-00043-BCW |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| CERNER CORPORATION, et al., | ) ) | |
| Defendants. | | |

**PLAINTIFFS BARBARA JANE FRECK, GLORIA ROBINSON, JALEEZA OWENS, LYNN MUSERELLI, PAUL CAPELLO, JIM HELTON AND JOSHUA CLARK'S SUGGESTIONS IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, APPROVAL OF CLASS NOTICE, APPROVAL OF PLAN OF ALLOCATION, AND SCHEDULING OF A FAIRNESS HEARING**

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1
II.    THE PROPOSED SETTLEMENT ...................................................................... 1
III.   THE PROPOSED SETTLEMENT SATISFIED THE STANDARDS FOR BOTH
       PRELIMINARY AND FINAL APPROVAL .................................................... 1
       A. Legal Standard ........................................................................................... 1
       B. The Settlement is Fair, Reasonable, and Adequate .................................... 3
          1.   The Merits of the Plaintiffs' Case Weighed In Favor of the Settlement ........... 3
          2.   The Defendants' Financial Condition ................................................ 5
          3.   The Complexity and Expense of Further Litigation ............................ 5
          4.   There is No Known Opposition to the Settlement ............................... 6
       C. The Requirements of FED. R. CIV. P. 23(e)(2) Also Are or Likely Will Be
          Satisfied…………………………………………………………………….6
          1.   Adequacy of Representation ............................................................. 7
          2.   Arm's Length Negotiations............................................................... 7
          3.   Effectiveness of Plan of Distribution ................................................ 8
          4.   Terms of Proposed Attorneys' Fees .................................................. 9
          5.   Equitable Treatment of Class Members............................................. 9
IV.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED................................. 10
V.     CLASS CERTIFICATION IS APPROPRIATE FOR SETTLEMENT PURPOSES... 10
       A. The Proposed Class Satisfies the Requirement of Rule 23(a) ................. 11
          1.   Numerosity....................................................................................... 11
          2.   Commonality..................................................................................... 11
          3.   Typicality ......................................................................................... 12
          4.   Adequacy .......................................................................................... 13
       B. The Proposed Class Meets the Requirements of Rule 23(b)(1)............... 14
       C. Capozzi Adler, P.C. and Foulston Siefkin LLP Should Be Appointed as Class
          Counsel .................................................................................................... 15
VI.    CONCLUSION................................................................................................ 15

i

# TABLE OF AUTHORITIES

PAGE(S)

**Statutes**

Class Action Fairness Act of 2005 ("CAFA") .................................................................15

28 U.S.C. §§ 1332(d) ...................................................................................................15

28 U.S.C. 1453 .............................................................................................................15

28 U.S.C. §§ 1711-1715 ..............................................................................................15

Fed. R. Civ. P. 23 .......................................................................................................13

Fed. R. Civ. P. 23(a)(1) ...............................................................................................11

Rules 23(a)(4) .............................................................................................................15

Fed. R. Civ. P. 23(b)(1) ...............................................................................................14

Fed. R. Civ. P. 23(b)(1)(A) ..........................................................................................14

Fed. R. Civ. P. 23(b)(1)(B) ..........................................................................................14

Fed. R. Civ. P. 23(e) ...................................................................................................2

Fed. R. Civ. P. 23(e)(1)(B)(i) ..................................................................................2, 10

Fed. R. Civ. P. 23(e)(2) ........................................................................................2, 3, 6

Fed. R. Civ. P. 23(e)(3) ...............................................................................................2

Rules 23(g) .................................................................................................................15

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv) ..............................................................................15

**Cases**

*Adams v. Cradduck*,
2016 WL 7664135 (W.D. Ark. Nov. 17, 2016) ....................................................2, 7, 9

*Aquila ERISA Litig.*,
237 F.R.D. 202 (W.D. Mo. 2006) .......................................................................11, 13

*Bonetti v. Embarq Mgmt. Co.*,
715 F. Supp. 2d 1222 (M.D. Fla. 2009) ..................................................................8

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) .............................................................................4

*Caligiuri v. Symantec Corp.*,
855 F.3d 860 (8th Cir. 2017) .............................................................................9

*Charter Commc'ns*,
2005 WL 4045741 (E.D. Mo. June 30, 2005) ...................................................5

*Clark v. Duke Univ.*,
2018 WL 1801946 (M.D.N.C. Apr. 13, 2018) ..................................................13

*Cooper v. Integrity Home Care, Inc.*,
2018 WL 3468372 (W.D. Mo. July 18, 2018).............................................4, 5, 6

*Cullan and Cullan LLC v. M-Qube, Inc.*,
2016 WL 5394684 (D. Neb. Sept. 27, 2016) ...............................................5, 10

*DeBoer v. Mellon Mortg. Co.*,
64 F.3d 1171 (8th Cir. 1995)............................................................................12

*Denard v. Transamerica Corp.*,
2016 WL 3554978 (N.D. Iowa June 24, 2016)..................................................9

*Dukes v. Wal-Mart Stores, Inc.*,
131 S. Ct. 2541 (2011)......................................................................................11

*Frazier v PJ Iowa, L.C.*,
337 F.Supp.3d 848 (S.D. Iowa 2018) ..............................................................13

*Grunin v. Int'l House of Pancakes*,
513 F.2d 114 (8th Cir. 1975) .............................................................................4

*Hashw v. Dep't Stores Nat'l Bank*,
182 F. Supp. 3d 935 (D. Minn. 2016)................................................................3

*Jones v. Casey's General Stores, Inc.*,
266 F.R.D. 222 (S.D. Iowa 2009) ....................................................................12

*Jones v. NovaStar Financial, Inc.*,
257 F.R.D. 181 (W.D. Mo. 2009) ...............................................................12, 14

Case 4:20-cv-00043-BCW   Document 60-1   Filed 02/18/21   Page 4 of 23

*Kanawi v. Bechtel,*
254 F.R.D. 102 (N.D. Cal. 2008) ........................................................................12

*Keil v. Lopez,*
862 F.3d 685 (8th Cir. 2017) ................................................................................3

*King v. Ranieri Constr., LLC et al.,*
2015 WL 631253 (E.D. Mo. Feb. 12, 2015) .........................................................7

*Krueger v. Ameriprise,*
2015 WL 4246879 (D. Minn. July 13, 2015) ........................................................5

*Krueger v. Ameriprise Fin,, Inc.,*
304 F.R.D. 559 (D. Minn. 2014) ...................................................................12, 14

*Kruger v. Novant Health, Inc.,*
2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) ..................................................6, 9

*Mass. Mut. Life Ins. Co. v. Russell,*
473 U.S. 134 (1985) ............................................................................................14

*Maxwell v. Tyson Foods, Inc.,*
2021 WL 12541110 (S.D. Iowa July 19, 2021) ...................................................13

*Mullane v. Central Hanover Bank and Trust Co.,*
339 U.S. 306 (1950) ............................................................................................10

*Netzel v. West Shore Group, Inc.,*
2017 WL 1906955 (D. Minn. May 8, 2017) ..........................................................8

*Paschal v. Child Dev., Inc.,*
2014 WL 112214 (E.D. Ark. Jan. 10, 2014) .......................................................14

*Paxton v. Union Nat. Bank,*
688 F.2d 552 (8th Cir. 1982) ........................................................................13, 14

*Petrovic v. Amoco Oil Co.,*
200 F.3d 1140 (8th Cir. 1999) .......................................................................3, 10

*Powers v. Credit Mgmt. Servs.,*
776 F.3d 567 (8th Cir. 2015) ................................................................................4

*Ramsey v. Sprint Comm. Co., L.P.,*
2012 WL 6018154 (D. Neb. Dec. 3, 2012) ...........................................................3

*Sacerdote v. NYU*,
328 F. Supp. 3d 273 (S.D.N.Y. 2018)..................................................................5

*Shanehchian v. Macy's, Inc.*,
2011 WL 883659 (S.D. Ohio Mar. 10, 2011)......................................................14

*Spano v. The Boeing Co*.,
2016 WL 3791123 (S.D. Ill. March 31, 2016)......................................................9

*Speer v. Cerner Corp.*,
2016 WL 5444648 (W.D. Mo. Sept. 27, 2016)....................................................11

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
463 F.3d 646 (7th Cir. 2006) ...............................................................................3

*Tussey v. ABB, Inc.*,
2017 WL 6343803 (W.D. Mo. Dec. 12, 2017) .....................................................5

*Tussey v. ABB, Inc.*,
2007 WL 4289694 (W.D. Mo. Dec. 3, 2007)..................................................12, 14

*In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig*.,
716 F.3d 1057, 1063 (8th Cir. 2013) ................................................................2, 7

*Wildman v. Am. Century Servs., LLC*,
2017 WL 6045487 (W.D. Mo. Dec. 6, 2017) ........................................4, 5, 12, 14

*Wireless Tel. Fed. Cost Recovery Fees Litig*.,
396 F.3d 922 (8th Cir. 2005) ...............................................................................2

*Zilhaver v. UnitedHealth Group, Inc.*,
646 F.Supp.2d 1075 (D. Minn. 2009)..................................................................12

# I. INTRODUCTION

Plaintiffs are current or former participants in the Cerner Corporation Foundations Retirement Plan (the "Plan") and filed lawsuits alleging Defendants breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA") by failing to prudently and loyally manage the Plan.[1] Defendants (together with Plaintiffs, the "Parties"), strongly dispute Plaintiffs' allegations and deny liability for the alleged ERISA violations. However, the Parties have agreed to a Settlement of $4,050,000.00 with additional non-monetary consideration.[2] Plaintiffs now present the Settlement Agreement for preliminary approval.

# II. THE PROPOSED SETTLEMENT

The Settlement provides Cerner (or its insurers) will pay $4,050,000.00 to be allocated to participants on a pro-rata basis pursuant to the Court-approved Plan of Allocation (described in Article V of the Settlement Agreement). The Parties also agreed to prospective relief which includes Cerner issuing a request for proposal for recordkeeping services for the Plan and precluding Cerner employees employed within the Company's Investment Relations function from serving on the Retirement Plan Committee for a period no less than three years. *See* Settlement Agreement, Art. VI. Cerner also shall send an annual notice, for a period of no less than three years, to all Plan participants reminding participants about the benefits of diversification. *Id.*

# III. THE PROPOSED SETTLEMENT SATISFIES THE STANDARDS FOR BOTH PRELIMINARY AND FINAL APPROVAL

## A. Legal Standard

---

[1] The full procedural history of this matter is recounted in the Declaration of Mark K. Gyandoh ("Gyandoh Decl."), filed contemporaneously with this memorandum, at ¶¶3-16.

[2] The Settlement Agreement is attached to the Gyandoh Decl. as Exhibit 1. Undefined terms herein shall have the meaning ascribed to them in the Settlement Agreement.

1

A court's review of a proposed class action settlement is a two-step process. "At the first stage, the parties submit the proposed settlement to the Court, which must make a 'preliminary fairness evaluation.'" *Adams v. Cradduck*, 2016 WL 7664135, at *3 (W.D. Ark. Nov. 17, 2016) (internal citations omitted). For a court to preliminarily approve a settlement, the settling parties "must provide the court with information to enable it to determine whether to give notice of the proposal to the class." FED. R. CIV. P. 23(e). To order notice should be given, the court must determine it will likely be able to approve the settlement at the final approval stage. FED. R. CIV. P. 23(e)(1)(B)(i).

To grant final approval, a court must determine a settlement is "fair, reasonable and adequate." *In re Uponor, Inc.*, 716 F.3d 1057, 1063 (8th Cir. 2013). The Eighth Circuit directs courts to consider the following factors in evaluating if it should approve a class action settlement:

> (1) the merits of the plaintiff's case weighed against the terms of the settlement;
> (2) the defendant's financial condition; (3) the complexity and expense of
> further litigation; and (4) the amount of opposition to the settlement.

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005). Further, FED. R. CIV. P. 23(e)(2) specifies consideration of the following factors:

> (A) the class representatives and class counsel have adequately
> represented the class; (B) the proposal was negotiated at arm's
> length; (C) the relief provided for the class is adequate, taking into
> account: (i) the costs, risks, and delay of trial and appeal; (ii) the
> effectiveness of any proposed method of distributing relief to the
> class, including the method of processing class-member claims; (iii)
> the terms of any proposed award of attorney's fees, including timing
> of payment; and (iv) any agreement required to be identified under
> Rule 23(e)(3);[3] and (D) the proposal treats class members equitably
> relative to each other.

---

[3] Rule 23(e)(3) requires "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." FED. R. CIV. P. 23(e)(3). Class Counsel have agreed among themselves on how they will share any fee award that is granted by the Court at the discretion of the Court.

FED. R. CIV. P. 23(e)(2). Here, the Settlement easily satisfies all of the above standards.

**B.  The Settlement is Fair, Reasonable, and Adequate.**

**1. The Merits of the Plaintiffs' Case Weighed In Favor of the Settlement.**

The merits of the plaintiffs' case are the most important consideration in deciding whether a settlement is fair, reasonable, and adequate. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1150 (8th Cir. 1999). "This is not a simple mathematical exercise with definite outcomes; a 'high degree of precision cannot be expected in valuing a litigation.'" *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 943 (D. Minn. 2016) (quoting *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)). Courts perform a "ballpark valuation." *Id.* at 463.

Here, Class Counsel determined potential damages to the Plan of between $10 - $15 million for Plaintiffs' core claim that (1) Defendants failed to utilize or move more quickly to lower cost identical mutual funds or materially identical collective trusts ("CITs") or separately managed accounts ("SMAs"), and (2) the Plan had  unreasonably high recordkeeping fees that averaged nearly $50 per participant annually (when, Plaintiffs allege, a reasonable amount was no more than $35 per participant).   Gyandoh Decl. at ¶ 21.   Accordingly, the Settlement Amount of $4,050,000.00 is approximately 27% to 40.5% of the Class's potential realistic damages.  This percentage, in and of itself, is reasonable and warrants preliminary approval. *See, e.g.*, *Keil v. Lopez*, 862 F.3d 685, 696 (8th Cir. 2017) (finding a 27% recovery of maximum possible full verdict at trial to be reasonable).  Additionally, Class Counsel negotiated prospective relief that inures to the benefit of the Settlement Class.

In considering the Settlement's fairness, a court must consider the challenges plaintiffs would face in prevailing on their claims. *See, e.g.*, *Ramsey v. Sprint Comm. Co., L.P.*, 2012 WL 6018154, at *3 (D. Neb. Dec. 3, 2012).  In doing so, a court "does not try the case," but instead

3

identifies whether the disputed factual and legal issues make it less likely for the plaintiffs to receive a full recovery. *Id.* (citing *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975)).

Here, Plaintiffs face significant hurdles to recovering their maximum damages, no matter what the figure. As an initial matter, their maximum damages figure is contingent on the Court certifying a class. While courts have certified classes in similar ERISA cases (*see*, *e.g.*, *Wildman v. Am. Century Servs., LLC*, 2017 WL 6045487 (W.D. Mo. Dec. 6, 2017)), class certification is not guaranteed. *See, e.g.*, *Powers v. Credit Mgmt. Servs.*, 776 F.3d 567, 570 (8th Cir. 2015) ("'Rigorous analysis is necessary" for a class to be certified). Defendants would be expected to oppose class certification on a number of grounds, including that several of the Plaintiffs signed arbitration agreements potentially making them inadequate class representatives.

Plaintiffs would also face challenges in proving their claims. Breach of fiduciary duty claims under ERISA depend on the process by which decisions were made rather than the results of those decisions. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009). Defendants maintain the process by which the Committee selected investments meets or exceeds the requirements of ERISA. These disputed issues support the Settlement's approval. *See, e.g.*, *Cooper v. Integrity Home Care, Inc.*, 2018 WL 3468372, at *2 (W.D. Mo. July 18, 2018) ("A settlement is bona fide if it reflects a reasonable compromise over issues actually in dispute."). Further, proving damages would not be a given. As set forth above, the $10-$15 million damages amount was a "best case" scenario and Defendants would try to minimize -- if not eliminate -- these alleged damages at the summary judgment stage or at trial.

The proposed Settlement is an immediate guaranteed result for the Class and warrants approval. Indeed, plaintiffs in two recent analogous breach of fiduciary actions, including one in

this District Court, have survived a motion to dismiss only to lose at trial. *See Wildman, et al., v. Am. Century Servs.*, 362 F. Supp. 3d 685 (W.D. Mo. 2019); *Sacerdote v. NYU*, 328 F. Supp. 3d 273 (S.D.N.Y. 2018).

### 2. The Defendants' Financial Condition.

While Cerner could withstand a judgment in an amount larger than the Settlement amount, the risks and expenses attendant to continuing this litigation, combined with the immediacy of the benefit to Settlement Class members, easily support a prompt resolution to this matter. This factor supports the Court's preliminary approval of the Settlement. *See, e.g., Cooper*, 2018 WL 3468372, at *4.

### 3. The Complexity and Expense of Further Litigation.

"The possible length and complexity of further litigation is a relevant consideration to the trial court in determining whether a class action settlement should be approved." *In re Charter Commc'ns*, 2005 WL 4045741, at *8 (E.D. Mo. June 30, 2005). Without settlement, the action would proceed with additional motions relating to class certification and then into merits discovery, and summary judgment, as well as a trial and a possible appeal. Each stage will take time and, importantly, present additional risks the Plaintiffs and Class members will receive less than the $4,050,000.00 million presently offered.

The Settlement provides money to the Class **now**, instead of years in the future **if** the Plaintiffs prevail on their claims. Courts have repeatedly recognized ERISA 401(k) cases "often lead [] to lengthy litigation." *Krueger v. Ameriprise*, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015). It is not unusual for ERISA "fee" cases to last for a decade or longer.[4] Plaintiffs would

---

[4] *See, e.g., Tussey v. ABB, Inc.*, 2017 WL 6343803, at *3 (W.D. Mo. Dec. 12, 2017) (requesting proposed findings on amount of damages more than 10 years after the suit was filed). The potential for protracted litigation supports the Settlement's approval. *See also Cullan and Cullan LLC v.*

5

also incur considerable expenses if this case continued.  To prove their claims, Plaintiffs would need to depose several Committee members and Fidelity Management and Trust Company employees.  These depositions, including the costs of transcripts and travel, would be expensive and reduce the net amount of the Class's recovery.  *Kruger v. Novant Health, Inc.*, 2016 WL 6769066, at *5 (M.D.N.C. Sept. 29, 2016) (granting final approval, noting "early settlement of a 401(k) excessive fee case benefits the employees and retirees in multiple ways.").

Even more expenses would be incurred related to expert testimony, as Plaintiffs would need to retain experts regarding, among other things, (a) the  Committee's process; (b) reasonable recordkeeping charges for similarly sized retirement plans; and (c) the amount of alleged damages caused by Defendants' alleged conduct.  Thus, the immediate and guaranteed benefit to the Settlement Class here outweighs the uncertainty and costs of continued litigation.

### 4. There is No Known Opposition to the Settlement.

This factor is more relevant at the final approval stage after Settlement Class members have been notified of the Settlement.  *See, e.g.*, *Cooper*, 2018 WL 3468372, at *4.  Regardless, Plaintiffs are not aware of any Class members who intend to oppose the Settlement.  Gyandoh Decl. at ¶ 31.

### C. The Requirements of FED. R. CIV. P. 23(e)(2) Also Are or Likely Will Be Satisfied

The Rule 23(e)(2) factors which the Court must address are (1) whether the class representatives and class counsel have adequately represented the class; (2) whether the proposal was negotiated at arm's length; (3) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (4) the terms of any

---

*M-Qube, Inc.*, 2016 WL 5394684, *7 (D. Neb. Sept. 27, 2016) (approving settlement because it provided "a real and substantial remedy without the risk and delay inherent in prosecuting this matter through trial and appeal…").

proposed award of attorney's fees, including timing of payment; and (5) whether the proposal treats class members equitably relative to each other.

### 1. Adequacy of Representation

This factor is addressed in Section V.C. of this brief (below), in connection with the request to certify a class for purposes of settlement.

### 2. Arm's Length Negotiations

The proposed Settlement here is the result of lengthy and complex arms-length negotiations between the Parties under the auspices of Hunter R. Hughes, III, a neutral, third-party private mediator with extensive experience mediating ERISA class actions.

A class action settlement is a private contract negotiated between the parties that is "presumptively valid." *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig*., 716 F.3d 1057, 1063 (8th Cir. 2013) (internal quotations omitted). Courts look for "glaring substantive or procedural deficiencies" and consider whether the "settlement carries the hallmarks of collusive negotiation or uninformed decision-making, is unduly favorable to class representatives or certain class members, or excessively compensates attorneys." *Adams*, 2016 WL 7664135, * 3 (citation omitted).

The Settlement does not contain any deficiencies, glaring or otherwise. Class Counsel was fully aware of this case's strengths and weaknesses when negotiating the Settlement, which supports the Settlement's preliminary approval. *See, e.g., King v. Ranieri Constr., LLC et al.*, 2015 WL 631253, at *3 (E.D. Mo. Feb. 12, 2015) (approving settlement when the "parties engaged in settlement negotiations and exchanged a large amount of documents and information for a month before submitting the proposed settlement."). Prior to engaging in settlement discussions, the Parties exchanged initial disclosures and engaged in targeted discovery in which Defendants

produced nearly four thousand pages of documents to Plaintiffs' counsel. Gyandoh Decl. at ¶¶ 17-18. Class Counsel also has in-depth knowledge of the legal framework applicable to this case. Class Counsel have extensive experience prosecuting, settling, and trying ERISA cases (and other complex matters) on behalf of retirement plan participants and extensive experience litigating matters such as this one in the Kansas City area federal courts, which they used to evaluate and negotiate the Settlement. Gyandoh Decl. at ¶¶ 23-30; Nehrbass Decl. ¶¶ 14-20. And Class Counsel used that knowledge and experience to not only negotiate for monetary relief, but also prospective non-monetary relief (including Cerner issuing a request for proposal for recordkeeping services for the Plan and precluding Cerner employees employed within the Company's Investment Relations function from serving on the Retirement Plan Committee) that will benefit the Plan moving forward. See Settlement Agreement, Art. VI.

Because the Settlement was negotiated by experienced counsel, there is a presumption it was "the product of arm's length negotiations." *Netzel*, 2017 WL 1906955, at *6; *see also Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1227 (M.D. Fla. 2009) ("If the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable.").

### 3. Effectiveness of Plan of Distribution

The Settlement describes a plan of allocating the Net Settlement Amount to Class Members that has been utilized in other analogous ERISA matters and is highly effective. *See* Settlement Agreement, Art. V. Current Plan participants – those who still maintain accounts in the Plan – will have payments made directly into their accounts. Former participants – those who no longer maintain a Plan account – shall have the opportunity to either rollover their distribution amount to

8

a qualified retirement account or receive a check.  *See* Settlement Agreement, Sec. 5.3. Beneficiaries of Class Members entitled to payment shall receive payment via check.  *Id.* Sec. 5.4.

## 4.  Terms of Proposed Attorneys' Fees

The Settlement does not excessively compensate Class Counsel.  The Settlement is not contingent on Class Counsel receiving a specific amount of fees and any fees they receive will be determined by the Court.  Settlement at §§ 7.1 and 7.3.  *Adams*, 2016 WL 7664135, at *6 (granting preliminary approval when "class counsel's compensation is not set by the settlement but will be determined by petition to the Court.").  The amount of fees Class Counsel intends to request, a third of the monetary portion of the Settlement, is reasonable and consistent with the awards in other ERISA cases.[5] As noted above, the Settlement also includes prospective non-monetary relief that will substantially benefit the Plan moving forward.  See Settlement Agreement, Art. VI.

## 5.  Equitable Treatment of Class Members

The Settlement does not unduly favor the Plaintiffs.  Plaintiffs' shares of the Settlement will be based on the Plan of Allocation, a formula based on the losses to their Plan account.  While Plaintiffs also intend to request Case Contribution Awards, the Settlement is not contingent on Plaintiffs receiving an award in a specified amount and the amount Plaintiffs intend to request is in line with the awards in other cases.[6]  Further, the Plan of Allocation agreed to by the Parties clearly treats class members equitably relative to each other because each member is entitled to

---

[5] *See Spano v. The Boeing Co*., 2016 WL 3791123, at *2 (S.D. Ill. March 31, 2016) (collecting cases); *see also Denard v. Transamerica Corp.*, 2016 WL 3554978, at *2 (N.D. Iowa June 24, 2016) (preliminarily approving settlement in ERISA class action where class counsel could seek fees of up to one third of the settlement fund); *Kruger*, 2016 WL 6769066 (approving attorneys' fees of one third of the settlement fund in ERISA 401(k) fiduciary breach class action).

[6] *See, e.g.*, *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017) (affirming decision to give case contribution awards of $10,000 to each of the plaintiffs); *see also Kruger*, 2016 WL 6769066, at *6 (awarding class representatives $25,000 each for their contributions).

9

their pro rata share of losses and any Class Member with at least $2.00 in losses will be entitled to a recovery.

Given the above, the Court can easily determine it is likely to grant final approval under Rule 23(e)(2), so preliminary approval is appropriate under Rule 23(e)(1)(B)(i).

## IV.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED

A proposed notice is adequate if it is "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Petrovic v. Amoco Oil Co*., 200 F.3d 1140, 1153 (8th Cir. 1999) (quoting *Mullane v. Central Hanover Bank and Trust Co*., 339 U.S. 306, 314 (1950)).  Here, the proposed Notice tells Settlement Class members about the lawsuit and the terms of the proposed Settlement, and it provides them the information they need to make informed decisions about their rights, including how and when to file an objection.  The Notice provides this information in a clear, concise manner.  Accordingly, the proposed Notice should be approved.  *Petrovic*, 200 F.3d at 1153; *Cullan and Cullan LLC v. M-Qube, Inc.*, 2016 WL 5394684, at *7 (D. Neb. Sept. 27, 2016) (approving notice when it was "written in plain English and designed to be read and understood.").

The method for distributing the Class Notice is also designed to reach all Settlement Class members, by mailing the Class Notice directly to Settlement Class members at their last known address. *See Mullane*, 339 U.S. at 315.  Class Counsel will also establish a dedicated website, www.CernerERISASettlement.com, which will include the Settlement, the proposed Notice, the Complaint and various other documents from this case.  Thus, the form of notice and proposed procedures for notice satisfy the requirements of due process.  *See* Newberg on Class Actions, § 8.34.

## V.    CLASS CERTIFICATION IS APPROPRIATE FOR SETTLEMENT     PURPOSES

10

Plaintiffs seek certification of a Settlement Class compromised of:

> [A]ll persons who were participants in or beneficiaries of the Plan at any time from January 21, 2014 through the date of the Preliminary Approval Order, inclusive. Excluded from the Class are Defendants (and their Beneficiaries) and any individuals who were members of the Compensation Committee or the Retirement Plan Committee from January 21, 2014 through the date of the Settlement Agreement, inclusive (and their Beneficiaries).

Settlement at §1.8. Plaintiffs' claims for breach of fiduciary duty under ERISA are well-suited for certification.

### A. The Proposed Class Satisfies the Requirements of Rule 23(a)

#### 1. Numerosity

Numerosity requires the class be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). This threshold is easily met, as the Plan had almost 26,000 participants by the end of the Class Period. Gyandoh Decl. at ¶ 31; *Speer v. Cerner Corp.*, 2016 WL 5444648, at *5 (W.D. Mo. Sept. 27, 2016) (numerosity met when there were thousands of proposed class members). Accordingly, numerosity is satisfied.

#### 2. Commonality

Commonality is typically present in ERISA cases because the "appropriate focus […] is the conduct of the defendants, not the plaintiffs." *In re Aquila ERISA Litig.,* 237 F.R.D. 202, 209 (W.D. Mo. 2006) (citation omitted). Plaintiffs must also show at least one of the questions common to the class can be answered with a common answer, meaning "that determination of its truth or falsity will resolve *an* issue that is central to the validity of each one of the claims in one stroke." *Dukes v. Wal-Mart Stores, Inc.*, 131 S. Ct. 2541, 2551 (2011) (emphasis added). Here, there are several common questions in this case with respect to each Class member, including (1) whether Defendants were fiduciaries of the Plan and (2) whether Defendants breached their

fiduciary duties to the Plan. *See Jones v. NovaStar Financial, Inc.*, 257 F.R.D. 181, 186 (W.D. Mo. 2009) (noting whether Defendants acted as fiduciaries or breached their fiduciary duties are examples of common issues of law fact). Defendants' alleged breaches of fiduciary duty affected the Plan in its entirety, not just Plaintiffs' accounts. The prospective non-monetary relief in the Settlement, in particular, will benefit all of the existing participants in the Plan equally moving forward. *See* Settlement Agreement, Art. VI. This satisfies commonality. *Kanawi v. Bechtel*, 254 F.R.D. 102, 109 (N.D. Cal. 2008).[7]

### 3. Typicality

Typicality requires "the claims or defenses of the representative parties are typical" of those of the class. FED. R. CIV. P. 23(a)(3). This requirement is "fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer*, 64 F.3d at 1174; *Wildman*, 2017 WL 6045487, at *4. Plaintiffs and all participants in the Plan (*i.e.*, the Settlement Class Members) sustained an economic loss arising out of Defendants' alleged breaches of fiduciary duty in violation of ERISA, which explicitly states §502(a)(2) claims are brought on behalf of retirement plans for plan-wide relief. *See e.g. Zilhaver v. UnitedHealth Group, Inc.*, 646 F.Supp.2d 1075 (D. Minn. 2009). Accordingly, since the interests of the Named Plaintiffs are aligned with those of the Settlement Class Members, typicality is satisfied. *Jones v. Casey's General Stores, Inc.*, 266 F.R.D. 222, 228 (S.D. Iowa 2009) ("A named plaintiff's claim is typical

---

[7] *See, e.g., Krueger v. Ameriprise Fin,, Inc.*, 304 F.R.D. 559, 572 (D. Minn. 2014) (certifying class because "the questions of whether Defendants breached their fiduciary duties by causing the Plan to select imprudent investment options …, and whether the Plan suffered losses from those breaches, are common to all Plan participants' claims[.]")*; Tussey*, 2007 WL 4289694, at *5 (certifying class "[b]ecause all members of the class are interested in these excess fees being returned to the Plan, there is clearly a common question …").

'if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory.") (quoting *Paxton*, 688 F.2d at 561).[8]

### 4. Adequacy

The focus of the adequacy requirement "is whether '(1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel.'" *In re Aquila ERISA Litig.*, 237 F.R.D. 202, 209 (W.D. Mo. 2006) (citing *Paxton v. Union Nat. Bank*, 688 F.2d 552, 562-63 (8th Cir. 1982)). This test assures "that the named plaintiffs not have interests 'antagonistic to those of the class.'" *Frazier v PJ Iowa, L.C.*, 337 F.Supp.3d 848, 873 (S.D. Iowa 2018) (citing *Maxwell v. Tyson Foods, Inc.*, 2021 WL 12541110, at *8 (S.D. Iowa July 19, 2021)). Here both prongs of the adequacy test are met.

Plaintiffs' claims and interests are aligned with those of the Settlement Class, as they are seeking to prove Defendants' liability based on common facts and claims and to maximize monetary recovery to the Plan and protect the Plan in the future, whether protection from allegedly excessive fees or from Cerner representatives who are allegedly more mindful of Cerner's best interests than the participants.' Moreover, no Settlement Class Members benefited from paying improper fees, and none would be harmed by the relief. In any event, "the class representative represents the *legal* interest of the class." *Clark v. Duke Univ.*, 2018 WL 1801946, at *8 (M.D.N.C. Apr. 13, 2018) (emphasis in original). A class representative "has no duty to make all class members happy." *Id.* Accordingly, no conflict exists between the named representatives and the unnamed Settlement Class Members.

---

[8] Although not a requirement for class certification under Fed. R. Civ. P. 23, the Settlement Class is clearly ascertainable here as it is defined by objective criteria — participation in the Plan during the defined Class Period. Defendants have lists of such people throughout the class period.

13

The second prong analyzes the capabilities and performance of Class Counsel.  *Paxton*, 688 F.2d at 563.  This prong, discussed *infra*, clearly demonstrates Plaintiffs' counsel is qualified to represent the Class.

### B.  The Proposed Class Meets the Requirements of Rule 23(b)(1).

The proposed Settlement Class satisfies Rule 23(b)(1)'s requirements for purposes of settlement.  "[T]he type of ERISA claims for breach of fiduciary duty raised here are particularly appropriate for Rule 23(b)(1)(A) and (B) certification because of ERISA's distinctive 'representative capacity' and remedial provisions."  *Paschal v. Child Dev., Inc.*, 2014 WL 112214, at *6 (E.D. Ark. Jan. 10, 2014); *see also Wildman*, 2017 WL 6045487, at *5-6; *Tussey*, 2007 WL 4289694, at *8.  Indeed, "ERISA litigation of this nature presents a paradigmatic example of a (b)(1) class."  *Jones v. NovaStar Fin., Inc.*, 257 F.R.D. 181, 194 (W.D. Mo. 2009) (citation and quotation marks omitted).

This action is no exception.  Here, the Complaint alleges breaches of fiduciary duties under ERISA.  Therefore, the only remedy available to participants in the Plan is Plan-wide relief, including the restoration of alleged losses.  *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 139-40 (1985).  Thus, the proposed Settlement Class meets the requirements of FED. R. CIV. P. 23(b)(1), given the nature of this action and the relief sought on behalf of the Class.   For example, "separate lawsuits by various individual Plan participants to vindicate the rights of the Plan could establish incompatible standards to govern Defendants' conduct, such as … determinations of differing 'prudent alternatives' against which to measure  the proprietary investments, or an order that Defendants be removed as fiduciaries."  *Ameriprise*, 304 F.R.D. at 577.[9]

---

[9] *See also Shanehchian v. Macy's, Inc.*, 2011 WL 883659, at *9 (S.D. Ohio Mar. 10, 2011) ("If liability is found in one court but not in another, Defendants would be left in limbo, having been

### C. Capozzi Adler, P.C. and Foulston Siefkin LLP Should Be Appointed as Class Counsel

To appoint Class Counsel, Rule 23(g) directs consideration of: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class." FED. R. CIV. P. 23(g)(1)(A)(i)-(iv). Proposed Class Counsel Capozzi Adler, P.C. and Foulston Siefkin LLP, have done substantial work, have experience litigating ERISA class actions and complex matters, and have committed ample resources to prosecute this matter. *See* Gyandoh Decl., ¶¶3-21, 23-30; Nehrbass Decl., ¶¶ 7-20; . Accordingly, they are well-qualified to weigh the risks and benefits of continued litigation as compared to the relief provided by the Settlement. Thus, Plaintiffs retained highly qualified and experienced attorneys in satisfaction of Rules 23(a)(4) and 23(g).

## VI. CONCLUSION

Plaintiffs propose the Fairness Hearing be scheduled at least 120 days after entry of the Preliminary Approval Order in order to provide the Settlement Class with fair notice and the opportunity to be heard, as well as to provide notice to appropriate federal and state officials as required by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, and 1711-1715. The submitted proposed preliminary approval order sets forth the proposed schedule of events which are subject to the Court's approval. For the reasons set forth above, the Settlement meets the standard for preliminary approval under Rule 23.

DATED: February 18, 2021           Respectfully submitted,

---

vindicated with respect to their duties to the Plans in one court but subject to judgment that would vitiate that vindication in another, thus making compliance impossible.").

**CAPOZZI ADLER, P.C.**

*/s/ Mark K. Gyandoh*_____
Mark K. Gyandoh
(admitted *pro hac vice*)
312 Old Lancaster Road
Merion Station, PA 19066
markg@capozziadler.com
(610) 890-0200
Fax (717) 233-4103

Donald R. Reavey
(admitted *pro hac vice*)
**CAPOZZI ADLER, P.C.**
2933 North Front Street
Harrisburg, PA 17110
Telephone:  (717) 233-4101
Facsimile:  (717) 233-4103

Scott C. Nehrbass, (Missouri 46529)
FOULSTON SIEFKIN LLP
32 Corporate Woods, Suite 600
9225 Indian Creek Parkway
Overland Park, Kansas 66210-2000
Phone: 913-253-2144; Fax: 866 347-1472
Email:  snehrbass@foulston.com

Boyd A. Byers, (Kansas 16253)
FOULSTON SIEFKIN LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, Kansas 67206-4466
Phone: 316-267-6371; Fax: 316-267-6345
Email:  bbyers@foulston.com

Kristie Blunt Welder (Missouri 61715)
**WELDER BLUNT WELDER**
      **& ASSOCIATES, LLC**
4741 Central Street, Suite 514
 Kansas City, Missouri 64112
 (844) 935-3373
kwelder@welderfirm.com

*Proposed Class Counsel*

16

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2021 a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

By: */s/ Mark K. Gyandoh*_____
Mark K. Gyandoh

17