IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| BARBARA JANE FRECK, GLORIA ROBINSON, JALEEZA OWENS, LYNN MUSERELLI, PAUL CAPELLO, JIM HELTON, and JOSHUA CLARK individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CERNER CORPORATION, et al.,<br><br>Defendants. | Civil Action<br>No. 4:20-cv-00043-BCW |

I, Mark K. Gyandoh, Esquire, as Class Counsel, declare as follows:

1.      I am a member in good standing of the bar of the Commonwealth of Pennsylvania and have personal knowledge of the facts set forth below and, if called as a witness, I could and would testify competently thereto.

2.      I am chair of the Fiduciary Practice Group at Capozzi Adler, P.C., and have been the lead attorney for my firm in this litigation representing Plaintiffs and the proposed Settlement Class in the above-captioned action.

***Procedural History***

3.      Following several months of investigation, Plaintiffs Barbara Jane Freck, Gloria Robinson, Jaleeza Owens, and Lynn Muserelli filed the initial Complaint on January 21, 2020 (ECF No. 1) against three categories of Defendants: (1) Cerner Corporation ("Cerner"), (2) Compensation Committee of the Cerner Corporation Board of Directors and its members ("Compensation Committee"), and the (3) Cerner Corporation Foundations Retirement Plan Administrative and Investment Committee and its members ("Investment Committee"). Plaintiffs

1

alleged, *inter alia*, that throughout the putative Class Period (January 21, 2014 through the date of judgment), Defendants selected a slate of investment options for the Plan that were imprudent due to their high fees where identical or nearly identical alternative funds – differing only in price – were available in the marketplace. Plaintiffs alleged had there been a prudent process in place, the majority of these funds would have been replaced with less expensive alternatives as early as the beginning of the Class Period.

4.      In addition to the aforementioned claims, Plaintiffs alleged the Plan suffered damages in excess of $3 million due to unreasonably high recordkeeping fees that averaged near $50 per participant annually when a reasonable amount should be no more than $35 per participant.

5.       On April 7, 2020, Defendants moved to dismiss the Complaint on the grounds that Plaintiffs signed arbitration agreements prohibiting them from bringing or participating in any class or collective action against Defendants. (ECF Nos. 28-29).

6.      Prior to Plaintiffs responding to the motion to dismiss, another class action lawsuit was filed on April 14, 2020 in the United States District Court for the District of Kansas by Plaintiff Joshua Clark, through counsel Foulston Siefkin LLP, titled *Clark v. Cerner Corporation, et al.,* Civil Action No. 2:20-cv-02194-EFM-TJJ, (ECF No. 1, in the District of Kansas). In addition to alleging the claims similar to those in the first lawsuit filed by Plaintiffs, Mr. Clark alleged Defendants breached their ERISA fiduciary duties by concentrating the Plan's investments in Cerner stock. Mr. Clark had not signed an arbitration agreement with Cerner and is a current participant in the Plan.

7.      Subsequent to the filing of the *Clark* lawsuit, Plaintiffs in the *Freck* matter filed an Amended Complaint on June 15, 2020 (ECF No. 39), adding Plaintiffs Paul Capello and Jim Helton who also had not signed arbitration agreements with Cerner.

2

8. In the Amended Complaint, Plaintiffs alleged in Count I that Cerner and the Committee Defendants breached their fiduciary duties to the Plan, Plaintiffs, and the proposed Class by failing to prudently and loyally manage the Plan's investment options and, in Count II, that Cerner and the Board Defendants breached their fiduciary duties by failing to adequately monitor other persons to whom management/administration of the Plan's assets was delegated.

9. On June 24, 2020, Defendants filed a Motion to Compel Arbitration and Dismiss the Complaint as to All Putative Class Members Subject to Arbitration Agreements. (ECF No. 40.). This motion did not apply to Plaintiffs Capello and Helton.

10. On July 8, 2020, Defendants filed an Answer, Defenses and Affirmative Defenses to Plaintiffs' Amended Complaint (ECF No. 46).

11. On July 22, 2020, Plaintiffs filed Plaintiffs' Suggestions In Opposition to Motion to Compel Arbitration and Dismiss the Complaint As To Putative Class Members Subject to Arbitration Agreements (ECF No. 47).

12. On August 5, 2020, Defendants filed Defendants' Suggestions In Support of Their Motion to Compel Arbitration and Dismiss the Complaint As To All Putative Class Members Subject to Arbitration Agreements (ECF No. 48).

13. Prior to the Court issuing a ruling on Defendants' Motion to Compel Arbitration and Dismiss the Complaint as to All Putative Class Members Subject to Arbitration Agreements, the Parties agreed to participate in a private mediation.

14. Mr. Clark and his counsel were invited to take part in the mediation and, as described below, both Mr. Clark and his counsel did actually and meaningfully participate in the mediation and submit an extensive mediation statement.

3

15. The mediation proved to be successful, as described in greater detail below, and resolved claims in both the *Freck* and *Clark* matters.

16. Following the mediation, Mr. Clark was added as a party plaintiff to the *Freck* action on January 14, 2021 (ECF 58), and counsel for Mr. Clark entered their appearances as additional class counsel in this. Mr. Clark then voluntarily dismissed his lawsuit pending in Kansas on January 15, 2021 without prejudice.

### *Discovery Practice*

17. On April 8, 2020, the Parties exchanged initial disclosures pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure.

18. On August 21, 2020, Defendants produced nearly four thousand pages of documents to Plaintiffs' counsel in anticipation of the upcoming mediation.

### *Mediation*

19. On September 9, 2020, the Parties participated in a mediation before Hunter R. Hughes, III, a neutral, third-party private mediator with experience mediating ERISA class actions.

20. Plaintiffs' counsel from both the *Freck* case and the *Clark* case submitted extensive mediation statements and exhibits drawn from their investigation of the case and the documents and information that Cerner had produced in targeted discovery, and Plaintiffs' counsel from both *Freck* and *Clark*, as well as Plaintiff Joshua Clark himself, personally and meaningfully participated in the mediation.

21. After reviewing all of the relevant information, Plaintiffs determined realistic potential damages to the Plan to be in the range of $10 - $15 million. This range is based on Plaintiffs' allegations that Defendants (1) failed to utilize lower cost identical mutual funds and materially identical collective trusts or other suitable, lower-cost investment vehicles and (2)

4

saddled the Plan with unreasonably high recordkeeping fees that averaged near $50 per participant annually when Plaintiffs allege a reasonable amount should not have been more than $35 per participant. In addition, Plaintiffs' counsel also pressed for non-monetary relief in the form of prospective changes in the administration of the Plan moving forward.

22.     Following several hours of mediation under Mr. Hughes' auspices, the parties arrived at a settlement in principle, settling this matter for $4,050,000.00 plus certain prospective relief regarding administration of the Plan. Several months of negotiations followed to finalize the terms of the Settlement Agreement, including its non-monetary terms. That Settlement Agreement, inclusive of exhibits, was finalized and executed on February 17, 2021. It is attached here as Exhibit 1.

### Counsel's Experience

23.     Throughout the litigation and settlement negotiation processes, Class Counsel has been cognizant of the strengths and weaknesses of Plaintiffs' claims and Defendants' defenses. Plaintiffs entered into this Settlement with a full and comprehensive understanding of the strengths and weaknesses of the claims, which is based on Class Counsel's extensive experience with ERISA litigation, the investigation performed in connection with filing the Complaint and the Amended Complaint, and the facts obtained during the course of litigation.

24.     With regard to Class Counsel's experience, I received both my J.D. (2001) and LLM in trial advocacy (2011) from Temple University School of Law. While at Temple, I was the research editor for the Temple International and Comparative Law Journal. After law school I served a one year judicial clerkship with the New Jersey state appellate court.

25.     I have been litigating ERISA fiduciary breach lawsuits for over 15 years, first at my prior firm of Kessler Topaz Meltzer & Check, LLP (KTMC), and currently at Capozzi Adler where I am chair of the Fiduciary Practice Group.

26.     The Fiduciary Practice Group is comprised of three partners, including myself, two associates, and five support staff, including paralegals. Additionally, as litigation dictates, the group avails itself of the services of the other attorneys and staff at the firm. The firm has three office locations, two in the Harrisburg area and one in the Philadelphia region. The firm has been successfully serving clients for over 23 years offering a full range of legal services.

27.     I have successfully handled dozens of ERISA breach of fiduciary duty class actions, including cases involving defined contribution retirement plans' investment lineups. I was also one of the lead attorneys in *Fifth Third Bancorp, et al., v. Dudenhoeffer, et al.*, 573 U.S. 409, 134 S. Ct. 2459 (2014), a seminal Supreme Court decision that clarified the unwavering duties owed by fiduciaries to pension plan participants. My biography is attached hereto as Exhibit 2.

28.     Additionally, Capozzi Adler has also been appointed interim lead or co-lead class counsel in several analogous ERISA breach of fiduciary duty matters. *See, e.g., Bilello, et al., v. Estee Lauder, Inc., et al.*, No. 1:20-cv-04770-JMF (S.D.N.Y. Aug. 10, 2020) (Doc. 11.) (appointing Capozzi Adler interim lead class counsel); *Covington et al. v. Biogen Inc. et al.*, No. 1:20-cv-11325 (D. Mass. Oct. 6, 2020 (Doc. 24) (appointing Capozzi Adler interim Co-Lead Class Counsel; *Tepper et al. v. Omnicom Group et al.*, No. 20-cv-4141 (S.D.N.Y. Sept. 17, 2020) (Doc. 13) (same); *Johnson et al. v. Quest Diagnostics et al.*, No. 2:20cv07936 (D.N.J. Oct. 2, 2020) (Doc. 7) (same).

29.     It is Plaintiffs' counsel's opinion that the proposed settlement is fair and reasonable.

30.     Plaintiffs have vigorously prosecuted this Action.  There is no doubt that lawsuits of this type brought pursuant to ERISA face significant litigation and trial risks.  The undersigned tried an analogous case to verdict – *Brieger v. Tellabs, Inc.*, 659 F. Supp. 2d 967 (N.D. Ill. 2009) – and is particularly qualified to realistically evaluate the risks of continued litigation.

31.     The Settlement Class encompasses thousands of Plan participants.  At the end of 2018 there were almost 26,000 participants with account balances in the Plan.  *See* 2018 Form 5500 filed with the U.S. Dept. of Labor.  Acknowledging that Class Notices have not been mailed to the Settlement Class, Plaintiffs are not aware of any Settlement Class members who intend to oppose the Settlement.

I declare, pursuant to 28 U.S.C. §1746 and under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 18th day of February 2021, in Merion Station, Pennsylvania.

**CAPOZZI ADLER, P.C.**

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh, Esquire

***Proposed Class Counsel***

EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| BARBARA JANE FRECK, GLORIA ROBINSON, JALEEZA OWENS, LYNN MUSERELLI, PAUL CAPELLO, JIM HELTON and JOSHUA CLARK, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 4:20-cv-00043-BCW |
| v. | ) ) ) | |
| CERNER CORPORATION, et al., | ) ) | |
| Defendants. | ) | |

## CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement, dated February 17, 2021 (the "Settlement Agreement"), is made and entered into by and among: (i) Plaintiffs Barbara Jane Freck, Gloria Robinson, Jaleeza Owens, Lynn Muserelli, Paul Capello, Jim Helton, and Joshua Clark, on behalf of themselves and each Class Member, by and through their counsel of record in the Action; and (ii) Defendants Cerner Corporation ("Cerner"), the Compensation Committee of the Cerner Corporation Board of Directors (the "Compensation Committee"), and the Cerner Corporation Foundations Retirement Plan Administrative and Investment Committee (the "Retirement Plan Committee"), by and through their counsel of record in the Action.[1] The Settlement Agreement is intended to fully, finally, and forever resolve, discharge, and settle the Released Claims, subject to the approval of the Court and the terms and conditions set forth in this Settlement Agreement.

### ARTICLE I

### DEFINITIONS

1.1 "Action" means the civil action captioned *Freck, et al. v Cerner Corporation, et al.*, Civil Action No. 4:20-cv-00043-BCW, pending in the United States District Court for the Western District of Missouri.

---

[1] Except as otherwise specified, all capitalized terms shall have the meanings set forth in Article I of this Settlement Agreement.

1.2    "Active Participant" means any Class Member who, as of the date of the Preliminary Approval Order, has a Plan account with a balance greater than $0.00 and is eligible to make contributions to the account.

1.3    "Administrative Expenses" means expenses incurred in the administration of this Settlement Agreement, except as otherwise provided in Section 3.1, including (a) all fees, expenses, and costs associated with the production and dissemination of the Notice to Class Members; (b) all expenses incurred by the Settlement Administrator in administering and effectuating this settlement and related tax expenses (including taxes and tax expenses described in Section 4.5); (c) all fees and expenses associated with the Settlement Website and telephone support line described in Article III; (d) all fees charged by the Settlement Administrator; and (e) all fees and expenses charged by the Independent Fiduciary, not to exceed $25,000, and Escrow Agent. Administrative Expenses shall be paid from the Gross Settlement Amount.

1.4    "Alternate Payee" means a person, other than an Active Participant, Inactive Participant, Former Participant, or Beneficiary, who is entitled to a benefit under the Plan as a result of a Qualified Domestic Relations Order.

1.5    "Attorneys' Fees and Expenses" means the amount awarded by the Court as compensation for the services provided by Class Counsel and the expenses incurred by Class Counsel in connection with the Action, including the investigation leading to it, which shall be recovered from the Gross Settlement Amount.

1.6    "Beneficiary" means a person who currently is entitled to receive a benefit under the Plan that is derivative of the interest of an Active Participant, Inactive Participant, or Former Participant, other than an Alternate Payee. A Beneficiary includes, but is not limited to, a spouse, surviving spouse, domestic partner, or child who currently is entitled to a benefit.

1.7    "CAFA Notice" means the notice required to be provided pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715.

1.8    "Class" or "Settlement Class" means all persons who were participants in or beneficiaries of the Plan at any time from January 21, 2014 through the date of the Preliminary Approval Order, inclusive. Excluded from the Class are Defendants (and their Beneficiaries) and any individuals who were members of the Compensation Committee or the Retirement Plan Committee from January 21, 2014 through the date of the Settlement Agreement, inclusive (and their Beneficiaries).

1.9    "Class Counsel" means, collectively, Capozzi Adler, P.C. and Foulston Siefkin LLP.

1.10   "Class Member" means a member of the Class.

1.11   "Class Period" means January 21, 2014 through the date of the Preliminary Approval Order, inclusive.

2

1.12   "Class Representatives" or "Plaintiffs" means the named Plaintiffs in this Action: Barbara Jane Freck, Gloria Robinson, Jaleeza Owens, Lynn Muserelli, Paul Capello, Jim Helton, and Joshua Clark.

1.13   "Company" means Cerner Corporation.

1.14   "Complaints" means, collectively, the documents filed at *Freck* ECF No. 1 on January 21, 2020; the document filed at *Freck* ECF No. 39 on June 15, 2020; and the document filed at *Clark v. Cerner Corporation, et al.,* Civil Action No. 2:20-cv-02194-EFM-TJJ ECF No. 1 on April 14, 2020.

1.15   "Court" means the United States District Court for the Western District of Missouri.

1.16   "Defendants" means Defendants Cerner, the Compensation Committee, and the Retirement Plan Committee.

1.17   "Defendants' Counsel" means James R. Carroll and Michael S. Hines of Skadden, Arps, Slate, Meagher & Flom LLP, and Scott C. Hecht and Christopher J. Leopold of Stinson LLP.

1.18   "Defendants' Released Claims" means any and all claims, actions, demands, rights, obligations, liabilities, damages, attorneys' fees, expenses, costs, and causes of action, whether known or unknown (including Unknown Claims as defined herein), which have been, or could have been, asserted in the Complaints or in any court or forum, by Defendants against any of the Released Plaintiff Parties, Plaintiffs or any Class Members, or their attorneys (including Class Counsel), which arise out of the institution, prosecution or settlement of the claims in the Complaints, except for claims to enforce the Settlement Agreement.

1.19   "Disputed Investments" means the following Plan investment options at issue in the Complaints: ABF Large Cap Value; American Century Government Bond R5; American Century Ultra IS; Cerner Corporate Stock; Fidelity 500 Index; Fidelity Government MM; Fidelity International Small Cap Opportunity; TRP Overseas Stock I; TRP Retirement 2005; TRP Retirement 2010; TRP Retirement 2015; TRP Retirement 2020; TRP Retirement 2025; TRP Retirement 2030; TRP Retirement 2035; TRP Retirement 2040; TRP Retirement 2045; TRP Retirement 2050; TRP Retirement 2055; TRP Retirement 2060; and Western Asset Core Bond I.

1.20   "Effective Date" means one business day following the later of (a) the date upon which the time expires for filing or noticing any appeal of the Final Approval Order; or (b) if there are any appeals, the date of dismissal or completion of any appeal, in a manner that finally affirms and leaves in place the Final Approval Order without any material modifications, and all proceedings arising out of the appeal(s) (including, but not limited to, the expiration of all deadlines for motions for reconsideration or rehearing or petitions for review and/or certiorari, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal(s) following decisions on remand).

3

1.21 "Entitlement Amount" means that portion of the Net Settlement Amount payable to an individual Class Member, as determined according to the procedures described in Article V.

1.22 "ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

1.23 "Escrow Account" means an account at an established financial institution established by Class Counsel for the deposit of the Gross Settlement Amount and amounts relating to it, such as income earned on the investment of the Gross Settlement Amount.

1.24 "Escrow Agent" means Analytics, an independent contractor to be retained by Class Counsel and approved by the Court, or its designee, which will serve as escrow agent for any portion of the Gross Settlement Amount deposited in or accruing in the Escrow Account pursuant to this Settlement Agreement.

1.25 "Fairness Hearing" means the hearing to be held before the Court pursuant to Federal Rule of Civil Procedure 23(e) to determine whether the Settlement Agreement should receive final approval by the Court.

1.26 "Final Approval Order" means the order and final judgment of the Court approving the Settlement, in substantially the form submitted in connection with Plaintiffs' Motion for Final Approval of the Settlement.

1.27 "Former Participant" means any Class Member who had a Plan account with a balance greater than $0.00 during the Class Period but who does not have a Plan account with a balance greater than $0.00 as of the date of the Preliminary Approval Order.

1.28 "Former Participant Rollover Form" means the form described generally in Section 5.3, substantially in the form attached as Exhibit B hereto.

1.29 "Former Participant Rollover Form Deadline" means a date that is no later than ten (10) calendar days before the Fairness Hearing.

1.30 "Gross Settlement Amount" means the sum of four-million and fifty-thousand U.S. dollars (USD $4,050,000.00), contributed to the Qualified Settlement Fund as described in Article IV. The Gross Settlement Amount shall be the full and sole monetary payment to the Plaintiffs, Class Members, and Class Counsel made on behalf of Defendants in connection with this Settlement Agreement. Defendants at no time shall have to pay more than the Gross Settlement Amount in connection with this Settlement, except as otherwise provided in Section 3.1

1.31 "Inactive Participant" means any Class Member who, as of the date of the Preliminary Approval Order, has a Plan account with a balance greater than $0.00 and is ineligible to make contributions to the account.

1.32 "Incentive Awards" means the amount of incentive or service awards awarded by the Court to the Plaintiffs.

4

1.33    "Independent Fiduciary" means the person or entity selected by Cerner in consultation with Class Counsel to serve as an independent fiduciary with respect to the Settlement Agreement for the purpose of rendering the determination described in Section 2.2.

1.34    "Mediator" means Hunter R. Hughes.

1.35    "Net Settlement Amount" means the Gross Settlement Amount, plus any interest or income earned on the Qualified Settlement Fund, less Administrative Expenses, Attorneys' Fees and Expenses, any Incentive Awards, and any other Court-approved deductions.

1.36    "Non-Disputed Investments" means any and all investment options offered by the Plan other than the Disputed Investments.

1.37    "Non-Rollover-Electing Former Participant" means a Former Participant who has not submitted a completed, satisfactory Former Participant Rollover Form by the Former Participant Rollover Form Deadline set by the Court, or whose Former Participant Rollover Form is rejected by the Settlement Administrator.

1.38    "Notice" means the form of Court-approved notice of this Settlement Agreement that is disseminated to Class Members.  The Parties shall propose that the Court approve the form of notice attached as Exhibit A hereto.  The Notice to Former Participants will include the Former Participant Rollover Form.

1.39    "Parties" means Plaintiffs and Defendants.

1.40    "Plaintiffs' Counsel" means, collectively, Capozzi Adler, P.C., Foulston Siefkin LLP, and Welder Blunt Welder & Associates, LLC.

1.41    "Plaintiffs' Released Claims" means any and all claims, actions, demands, rights, obligations, liabilities, damages, attorneys' fees, expenses, costs, and causes of action, whether known or unknown (including Unknown Claims as defined herein), against any of the Released Defendant Parties based on facts existing as of the Effective Date:

(a)    that were asserted in the Complaints or could have been asserted in the Complaints that arise out of, are based on, or have any connection with any of the allegations, acts, omissions, purported conflicts, representations, misrepresentations, facts, events, matters, transactions, or occurrences asserted in the Complaints, whether or not pleaded in the Complaints, including but not limited to those that arise out of, are based on, or have any connection with:  (1) the selection, retention, and monitoring of the Plan's investment options and service providers, (2) the performance, fees, and other characteristics of the Plan's investment options, including their specific share classes, (3) the Plan's fees and expenses, including without limitation the fees and expenses associated with the provision of recordkeeping services; (4) the nomination, appointment, retention, monitoring, and removal of the Plan's fiduciaries, and (5) the approval by the Independent Fiduciary of the Settlement Agreement;

(b)    that would be barred by *res judicata* based on the Court's entry of the Final Approval Order;

5

(c)     that arise from or relate to the direction to calculate, the calculation of, and/or the method or manner of the allocation of the Net Settlement Fund pursuant to the Plan of Allocation; or

(d)     that arise from or relate to the approval by the Independent Fiduciary of the Settlement Agreement.

Notwithstanding anything herein, the following shall not be included in the definition of Plaintiffs' Released Claims: (i) claims to enforce the Settlement Agreement, and (ii) claims for denial of benefits from the Plan.

1.42    "Plan" means the Cerner Corporation Foundations Retirement Plan.

1.43    "Plan of Allocation" means the methodology for allocating and distributing the Net Settlement Amount as described in Article V.

1.44    "Preliminary Approval Order" means the order of the Court preliminarily approving the Settlement Agreement, in substantially the form submitted in connection with Plaintiffs' Motion for Entry of Preliminary Order.

1.45    "PTE 2003-39" means U.S. Department of Labor Prohibited Transactions Exemption 2003-39, 68 Fed. Reg. 75,632 (Dec. 31, 2003), as amended.

1.46    "Qualified Domestic Relation Order" means a judgment, decree, or order (including the approval of a property settlement) that is made pursuant to state domestic relations law (including community property law) and that relates to the provision of child support, alimony payments, or marital property rights for the benefit of a spouse, former spouse, child, or other dependent of an Active Participant, Inactive Participant, or Former Participant and which has been determined qualified pursuant to the Plan's procedures.

1.47    "Qualified Settlement Fund" means the interest-bearing settlement fund account to be established and maintained by the Escrow Agent as described in Article IV.

1.48    "Recordkeeper" means Fidelity Management Trust Company.

1.49    "Released Claims" means, collectively, Defendants' Released Claims and Plaintiffs' Released Claims.

1.50    "Released Defendant Parties" means each Defendant and its present, former, or future affiliates, agencies, agents, assigns, associates, directors, employees, officers, parents, partners, representatives, subsidiaries, predecessors and successors, and all respective heirs, executors, administrators, agents, attorneys, personal representatives, predecessors, successors, stockholders, partners, servicers, subrogees, officers, directors, associates, controlling persons, employees, attorneys, counselors, insurers, reinsurers, financial or investment advisors, consultants, accountants, investment bankers, commercial bankers, or advisors of any of the foregoing.

6

1.51    "Released Parties" means Released Defendant Parties and Released Plaintiff Parties, collectively.

1.52    "Released Plaintiff Parties" means each Plaintiff or Class Members, or Plaintiffs' Counsel or Class Counsel.

1.53    "Rollover-Electing Former Participant" means a Former Participant who has submitted a completed, satisfactory Former Participant Rollover Form by the Former Participant Rollover Form Deadline set by the Court and whose Former Participant Rollover Form is accepted by the Settlement Administrator.

1.54    "Settlement" or "Settlement Agreement" means the compromise and resolution embodied in this agreement and its exhibits.

1.55    "Settlement Administrator" means Analytics, an independent contractor to be retained by Class Counsel and approved by the Court.

1.56    "Settlement Allocation Score" has the meaning ascribed to it in Section 5.1.

1.57    "Settlement Website" means the internet website established by the Settlement Administrator as described in Section 3.3.

1.58    "Unknown Claims" means any and all of Plaintiffs' Released Claims which any Plaintiff or any Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Defendant Parties, and any and all of Defendants' Released Claims which any Defendant does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Plaintiff Parties which if known by him, her or it might have affected his, her, or its decision(s) with respect to the release of the Released Parties, or might have affected his, her, or its decision(s) not to object to this Settlement Agreement. With respect to any and all of Plaintiffs' Released Claims, the Parties stipulate and agree that upon the Effective Date, the Parties and Class Members shall be deemed to have waived, and by operation of the entry of the Final Approval Order shall have expressly waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Parties acknowledge, and Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Plaintiffs' Released Claims was separately bargained for and was a material and necessary element of the Settlement.

7

# ARTICLE II

## SETTLEMENT APPROVAL

2.1     Preliminary approval by Court.  As soon as practicable following execution of the Settlement Agreement, Plaintiffs, through Class Counsel, shall apply to the Court for entry of the unopposed Preliminary Approval Order, which shall include, among other provisions, a request that the Court:

(a)     appoint Plaintiffs as Class Representatives of the Class;

(b)     appoint Class Counsel to represent the Class;

(c)     approve the Parties' selection of Settlement Administrator and Escrow Agent;

(d)     conditionally certify the Class under Federal Rule of Civil Procedure 23(b)(1) for settlement purposes only and without prejudice to the Defendants' right to contest class certification if the Final Approval Order is not entered;

(e)     preliminarily approve this Settlement for purposes of disseminating notice to the Certified Class;

(f)     approve the form and contents of the Notice (including the Former Participant Rollover Form to be sent to Former Participants) and hold that mailing copies of the Notice to Class Members by first class mail, postage prepaid complies fully with the requirements of Federal Rule of Civil Procedure 23, the United States Constitution, and any other applicable law;

(g)     preliminarily bar and enjoin all Class Members from the institution and prosecution of any of Plaintiffs' Released Claims against any of the Released Defendant Parties and preliminarily bar and enjoin Defendants from the institution and prosecution of any of Defendants' Released Claims against any of the Released Plaintiff Parties, pending final approval of this Settlement Agreement;

(h)     provide that Class Members may object to the Settlement prior to the Fairness Hearing according to a designated schedule; and

(i)     schedule a Fairness Hearing to (1) review comments and/or objections regarding this Settlement and/or Class Counsel's request for any Attorneys' Fees and Expenses and Incentive Awards, (2) consider the fairness, reasonableness, and adequacy of this Settlement Agreement, (3) consider whether the Court should issue a Final Approval Order approving this Settlement Agreement, awarding any Attorneys' Fees and Expenses and Incentive Awards, and dismissing the Action with prejudice, and (4) consider such other matters as the Court may deem appropriate.

8

2.2    Review by Independent Fiduciary.  Cerner shall, in consultation with Class Counsel, select and retain the Independent Fiduciary, on behalf of the Plan, to determine whether to approve and authorize Plaintiffs' Released Claims on behalf of the Plan.

(a)    The Independent Fiduciary shall comply with all relevant requirements set forth in PTE 2003-39.

(b)    The Independent Fiduciary shall notify Cerner and Class Counsel of its determination in writing and in accordance with PTE 2003-39, which notification shall be delivered no later than thirty (30) calendar days before the Fairness Hearing.

(c)    If the Independent Fiduciary disapproves or otherwise does not authorize the Settlement Agreement or refuses to execute the release on behalf of the Plan, the Defendants (and only the Defendants) may (but need not) terminate the Settlement Agreement.

(d)    The Parties shall comply with reasonable requests for information made by the Independent Fiduciary.

(e)    All fees and expenses associated with the Independent Fiduciary's retention and determination, up to $25,000, shall be considered Administrative Expenses.

2.3    Final approval by Court.  No later than fourteen (14) days prior to the deadline provided in the Preliminary Approval Order for Class Members to object to the Settlement Agreement, or by such other deadline as specified by the Court, Class Counsel shall apply to the Court for entry of the Final Approval Order, which shall include, among other provisions, a request that the Court:

(a)    dismiss the Action with prejudice and without costs, except as contemplated by this Settlement Agreement;

(b)    decree that neither the Final Approval Order nor this Settlement Agreement constitutes an admission by any Defendant or Released Party of any liability or wrongdoing whatsoever;

(c)    bar and enjoin all Class Members from asserting any of Plaintiffs' Released Claims against any of the Released Defendant Parties;

(d)    bar and enjoin all Defendants from asserting any of Defendants' Released Claims against any of the Released Plaintiff Parties.

(e)    determine that this Settlement Agreement is entered into in good faith and represents a fair, reasonable, and adequate settlement that is in the best interests of the Class Members; and

(f)    preserve the Court's continuing and exclusive jurisdiction over the Parties and all Class Members to administer, construe, and enforce this Settlement Agreement in accordance with its terms for the mutual benefit of the Parties, but without affecting the finality of the Final Approval Order.

9

## ARTICLE III

## SETTLEMENT ADMINISTRATION

3.1     CAFA Notice.  No later than ten (10) calendar days after the Plaintiffs'
filing of this Settlement Agreement and motion for entry of the Preliminary Approval Order with
the Court, Defendants, through the Settlement Administrator, shall provide appropriate notice of
this Settlement Agreement to the Attorney General of the United States and to the Attorneys
General of all states in which Class Members reside, as specified in 28 U.S.C. § 1715(b).  The
costs of such notice shall be borne in full by Defendants and shall not be considered an
Administrative Expense.  Upon completing such notice, the Settlement Administrator shall
provide written notice to Class Counsel and Defendants' Counsel.

3.2     Notice to Class Members.

(a)     Cerner shall cause the Recordkeeper (or its designee) to provide to
the Settlement Administrator all information necessary to disseminate the Notice to Class
Members and implement the Plan of Allocation no later than fourteen (14) calendar days after
the entry of the Preliminary Approval Order.

(b)     No later than thirty (30) calendar days after the entry of the
Preliminary Approval Order, or by such other deadline as specified by the Court, the Settlement
Administrator shall send the Notice by first-class mail, postage prepaid to Class Members.

(c)     The Notice shall be in the form approved by the Court, which shall
be in substantially the form attached as Exhibit A hereto.  The Notice to Former Participants will
include the Former Participant Rollover Form.

(d)     The Notice shall be sent to the last known address of each Class
Member provided by the Recordkeeper (or its designee), unless an updated address is obtained
by the Settlement Administrator through its efforts to verify the last known address provided by
the Recordkeeper (or its designee).

(e)     The Settlement Administrator shall use commercially reasonable
efforts to locate any Class Member whose Notice is returned and mail such Notices to those
Class Members one additional time.

(f)     The Settlement Administrator shall post a copy of the Notice and the
Former Participant Rollover Form on the Settlement Website.

3.3     Settlement Website.

(a)     No later than thirty (30) calendar days after the entry of the
Preliminary Approval Order, the Settlement Administrator shall establish the Settlement
Website.  The Settlement Administrator shall maintain the Settlement Website until no later than
one year after the Effective Date or thirty (30) calendar days after the receipt of the notice(s)
referenced in Section 5.5, whichever is earlier, at which point the Settlement Administrator shall
take down the Settlement Website.

10

(b)     The Settlement Website shall contain a copy of the Notice, Former Participant Rollover Form, and relevant case documents, including but not limited to a copy of all documents filed with the Court in connection with the Settlement.  No other information or documents will be posted on the Settlement Website unless agreed to in advance by the Parties in writing.

(c)     The Settlement Website shall also include a toll-free telephone number and mailing address through which Class Members may contact the Settlement Administrator (or its designee) directly.  With approval and input from Class Counsel and Defendants' Counsel, the Settlement Administrator shall develop a question-and-answer script for use with callers to the toll-free telephone number.

3.4     <u>Distribution of Net Settlement Amount.</u>  The Settlement Administrator shall distribute the Net Settlement Amount to Class Members in accordance with the Plan of Allocation as described in Article V.  Within thirty (30) calendar days after entry of the Final Approval Order, Cerner shall use reasonable efforts to cause the Recordkeeper (or its designee) to provide an updated list of Active Participants and Inactive Participants prior to the distribution, so as to identify any such participants who have taken a full distribution from their Plan account and no longer have a Plan account with a balance greater than $0.00.

3.5     <u>Maintenance of records.</u>  The Settlement Administrator shall maintain reasonably detailed records of its activities carried out under this Settlement Agreement.  The Settlement Administrator shall maintain all such records as required by applicable law in accordance with its business practices and provide same to Class Counsel and Defendants' Counsel upon their request. The Settlement Administrator shall provide such information as may reasonably be requested by Plaintiffs or Defendants or their counsel relating to the administration of the Settlement Agreement.

3.6     <u>No liability.</u>  Defendants, Defendants' Counsel, and Released Defendant Parties shall have no responsibility for, interest in, or liability whatsoever, with respect to:

(a)     any act, omission, or determination of the Settlement Administrator;

(b)     any act, omission, or determination of Class Counsel or their designees or agents in connection with the administration of the Settlement Agreement;

(c)     the management, investment, or distribution of the Qualified Settlement Fund; or

(d)     the determination, administration, calculation, or payment of any claims asserted against the Qualified Settlement Fund.

**ARTICLE IV**

**ESTABLISHMENT OF QUALIFIED SETTLEMENT FUND**

4.1     <u>Establishment of the Qualified Settlement Fund.</u>  Following the entry of the Preliminary Approval Order, the Escrow Agent shall establish the Escrow Account.  The

11

Parties agree that the Escrow Account is intended to be, and will be, an interest-bearing Qualified Settlement Fund within the meaning of U.S. Department of Treasury Regulation § 1.468B-1 (26 C.F.R. § 1.468B-1). In addition, the Escrow Agent timely shall make such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in 26 C.F.R. § 1.468B-1(j)(2)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to prepare and deliver, in a timely and proper manner, the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

4.2     Funding of the Qualified Settlement Fund. In consideration of all the promises and agreements set forth in the Settlement Agreement, Cerner (or its insurers) will contribute, or cause to be contributed, the Gross Settlement Amount to the Qualified Settlement Fund. No other Defendant shall have any obligation to contribute financially to the Qualified Settlement Fund. Cerner (or its insurers) shall contribute the Gross Settlement Amount to the Qualified Settlement Fund, and this funding, in the aggregate, together with any interest and investment earnings thereon, shall constitute the Qualified Settlement Fund:

(a)     No later than thirty (30) calendar days after the later of (i) the Preliminary Approval Order is entered, or (ii) the Escrow Account described in Section 4.1 is established and the Escrow Agent shall have furnished to Defendants in writing the Escrow Account name, IRS W-9 form, and all necessary wiring instructions, Cerner (or its insurers) shall cause to be deposited one hundred fifty thousand U.S. dollars (USD $150,000.00) of the Gross Settlement Amount into the Qualified Settlement Fund to fund any Administrative Expenses that arise before the entry of the Final Approval Order.

(b)     No later than thirty (30) calendar days after entry of the Final Approval Order, Cerner (or its insurers) shall cause the remaining portion of the Gross Settlement Amount (three million, nine hundred thousand U.S. dollars (USD $3,900,000.00)) to be deposited in the Qualified Settlement Fund.

4.3     Qualified Settlement Fund administrator. For the purpose of § 468B of the Internal Revenue Code of 1986, as amended (26 U.S.C. § 468B) and the regulations promulgated thereunder, the administrator of the Qualified Settlement Fund shall be the Escrow Agent. The Escrow Agent, or the Settlement Administrator on its behalf, shall timely and properly cause to be filed all informational and other tax returns necessary or advisable with respect to the Gross Settlement Amount (including without limitation applying for a taxpayer identification number for the Qualified Settlement Fund and filing the returns described in 26 C.F.R. § 1.468B-2(k)). Such returns, as well as the election described in Section 4.1, shall be consistent with this Article and, in all events, shall reflect that all taxes (including any estimated taxes, interest, or penalties) on the income earned by the Qualified Settlement Fund shall be deducted and paid from the Qualified Settlement Fund as described in Section 4.5.

4.4     Investment of the Qualified Settlement Fund. The Escrow Agent shall invest the Qualified Settlement Fund in short-term United States agency or Treasury securities or other instruments backed by the full faith and credit of the United States government or an agency thereof, or fully insured by the United States government or an agency thereof, and shall

12

reinvest the proceeds of these investments as they mature in similar instruments at their then-current market rates.

        4.5        <u>Taxes on the income of the Qualified Settlement Fund.</u>  All taxes on any income of the Qualified Settlement Fund and expenses and costs incurred in connection with the taxation of the Qualified Settlement Fund (including, without limitation, expenses of tax attorneys and accountants) are Administrative Expenses and shall be timely paid by the Escrow Agent out of the Qualified Settlement Fund. The Escrow Agent, or the Settlement Administrator on its behalf, shall be responsible for making provision for the payment from the Qualified Settlement Fund of all taxes and tax expenses, if any, owed with respect to the Qualified Settlement Fund and for all tax reporting, remittance, and/or withholding obligations, if any, for amounts distributed from it. Defendants, Defendants' Counsel, and Plaintiffs' Counsel have no responsibility or any liability for any taxes or tax expenses owed by, or any tax reporting or withholding obligations, if any, of the Qualified Settlement Fund.

## ARTICLE V

## PLAN OF ALLOCATION

        5.1        <u>Calculation of payments to individual Class Members.</u>  Payments to each Class Member shall be calculated by the Settlement Administrator as follows, based on information provided by the Recordkeeper:

        (a)        For each Class Member, the Settlement Administrator shall determine a *Settlement Allocation Score*. A Class Member's *Settlement Allocation Score* shall be the aggregate of his or her quarter-ending account balance measured in points such that each dollar invested in the Disputed Investments equals four (4) points, and each dollar invested in the Non-Disputed Investments equals one (1) point.[2] A Class Member's *Average Settlement Allocation Score* shall be the average of his or her *Settlement Allocation Scores* during the Class Period, weighted by the percentage of days in the quarter for partial quarters at the beginning of the Class Period.[3]

---

[2] Mathematically stated, each quarterly *Settlement Allocation Score* calculation is as follows: (Disputed Investments quarter ending balance * 4) + (Non-Disputed Investments quarter ending balance).

[3] Mathematically stated, the *Average Settlement Allocation Score* shall be calculated as follows: ((Q1 2014 Settlement Allocation Score * 21/90) + (Q2 2014 Settlement Allocation Score) + (Q3 2014 Settlement Allocation Score) + (Q4 2014 Settlement Allocation Score) + (Q1 2015 Settlement Allocation Score) + (Q2 2015 Settlement Allocation Score) + (Q3 2015 Settlement Allocation Score) + (Q4 2015 Settlement Allocation Score) + (Q1 2016 Settlement Allocation Score) + (Q2 2016 Settlement Allocation Score) + (Q3 2016 Settlement Allocation Score) + (Q4 2016 Settlement Allocation Score) + (Q1 2017 Settlement Allocation Score) + (Q2 2017 Settlement Allocation Score) + (Q3 2017 Settlement Allocation Score) + (Q4 2017 Settlement Allocation Score) + (Q1 2018 Settlement Allocation Score) + (Q2 2018 Settlement Allocation Score) + (Q3 2018 Settlement Allocation Score) + (Q4 2018 Settlement Allocation Score) + (Q1 2019 Settlement Allocation Score) + (Q2 2019 Settlement Allocation Score) + (Q3 2019 Settlement Allocation Score) + (Q4 2019 Settlement Allocation Score) + (Q1 2020 Settlement Allocation Score) + (Q2 2020 Settlement Allocation Score) + (Q3 2020 Settlement Allocation Score)) *divided by* 26.23 quarters during the Class Period.

13

(b)     The Settlement Administrator shall determine the total settlement payment available to each Class Member by calculating each such Class Member's pro rata share of the Net Settlement Fund based on his or her *Settlement Allocation Score* compared to the sum of the *Settlement Allocation Scores* for all Class Members. If the dollar amount of the settlement payment to a Class Member is calculated by the Settlement Administrator to be less than $2.00, then that Class Member's payment or pro rata share shall be zero for all purposes.

(c)     The aggregate of all Class Members' Entitlement Amounts may not exceed the Net Settlement Amount. In the event that the Settlement Administrator determines that aggregate monetary payment pursuant to the Plan of Allocation would exceed the Net Settlement Amount, the Settlement Administrator is authorized to make such pro rata changes as are necessary to ensure that the aggregate monetary payment pursuant to the Plan of Allocation does not exceed the Net Settlement Amount.

5.2     Payments to Active Participants and Inactive Participants.

(a)     Upon completing the calculation of each Class Member's Entitlement Amount and no later than thirty (30) calendar days following the Effective Date, the Settlement Administrator shall provide Defendants' Counsel, Class Counsel, and the Recordkeeper information in a mutually agreeable format concerning each Active Participant's and each Inactive Participant's Entitlement Amount, and any other information requested by Cerner or the Recordkeeper as necessary to effectuate this Article.

(b)     No later than ten (10) calendar days after completing the steps described in Section 5.2(a) and upon written notice to Cerner and the Recordkeeper, the Settlement Administrator shall effect a transfer from the Qualified Settlement Fund to the Plan of all monetary payments payable to Active Participants and Inactive Participants. The Recordkeeper shall thereafter credit the individual Plan account of each Active Participant and Inactive Participant in an amount equal to that individual's Entitlement Amount.

(c)     Each Active Participant's and each Inactive Participant's Entitlement Amount shall be invested in accordance with and in proportion to such Active Participant's investment elections then on file for new contributions to his or her Plan account. If the Active Participant or Inactive Participant does not have an investment election on file, then such individual shall be deemed to have directed payment of his or her Entitlement Amount to be invested in the Plan's qualified default investment alternative, as defined in 29 C.F.R. § 2550.404c-5.

(d)     If, as of the date on which the Recordkeeper credits the individual Plan account of each Active Participant and Inactive Participant with his or her Entitlement Amount, an individual believed to be an Active Participant or an Inactive Participant no longer has a Plan account balance greater than $0.00, he or she will be treated as a Former Participant. The Recordkeeper shall promptly transmit a list of such individuals to the Settlement Administrator, who shall effectuate payment to such individuals in accordance with Section 5.3.

14

(e)     Neither Plaintiffs, Plaintiffs' Counsel, Defendants, or Defendants' Counsel will be responsible or liable in any way for ensuring the completeness or accuracy of the information provided by the Recordkeeper pursuant to this section.

5.3     Payments to Former Participants.

(a)     Each Former Participant (or the Beneficiaries or Alternate Payees of Former Participants) will have the opportunity to elect a tax-qualified rollover of his or her Entitlement Amount to an individual retirement account or other eligible employment plan, which he or she has identified on the Former Participant Rollover Form, provided that the Former Participant supplies adequate information to the Settlement Administrator to effect the rollover. Payments to each Former Participant shall depend on whether each is a Rollover-Electing Former Participant or a Non-Rollover-Electing Former Participant:

(i)     Rollover-Electing Former Participants. Upon completing the calculation of each Class Member's Entitlement Amount and no later than forty (40) calendar days following the Effective Date, the Settlement Administrator shall effect a rollover from the Qualified Settlement Fund to the individual retirement account or other eligible employer plan elected by each Rollover-Electing Former Participant in his or her Former Participant Rollover Form (if the conditions for such rollover are satisfied) and any associated paperwork necessary to transfer such Entitlement Amount by rollover. If the Settlement Administrator is unable to effectuate the rollover instructions of any Rollover-Electing Former Participant as provided in his or her Former Participant Rollover Form, he or she will be treated as a Non-Rollover-Electing Former Participant.

(ii)     Non-Rollover-Electing Former Participants. Upon completing the calculation of each Class Member's Entitlement Amount and no later than forty (40) calendar days following the Effective Date, the Settlement Administrator shall issue a check from the Qualified Settlement Fund to each Non-Rollover-Electing Former Participant, in the amount of each Former Participant's Entitlement Amount (less any withholdings).

5.4     Payments to Beneficiaries and Alternate Payees.

(a)     Beneficiaries of Active Participants or Inactive Participants that are entitled to receive all or a portion of an Active Participant's or Inactive Participant's Entitlement Allocation under this Article shall receive such settlement payments in the form of a check issued by the Settlement Administrator. Beneficiaries of Former Participants that are entitled to receive all or a portion of a Former Participant's Entitlement Allocation under this Article will receive such settlement payments under the methods described in Section 5.3 for Former Participants.

(b)     Alternate Payees of Active Participants or Inactive Participants that are entitled to receive all or a portion of an Active Participant's or Inactive Participant's Entitlement Allocation under this Article shall receive such settlement payments pursuant to the terms of the applicable Qualified Domestic Relations Order. Alternate Payees of Former Participants that are entitled to receive all or a portion of a Former Participant's Entitlement

15

Allocation under this Article will receive such settlement payments under the methods described in Section 5.3 for Former Participants.

(c)     The Settlement Administrator shall have sole and final discretion to determine the amounts to be paid to Beneficiaries and Alternate Payees in accordance with the Plan of Allocation set forth in this Article and as ordered by the Court.

(d)     All checks issued in accordance with the Plan of Allocation shall be mailed to the address of each Class Member (or his or her Beneficiary or Alternate Payee) provided by the Recordkeeper or any updated address obtained by the Settlement Administrator.

(e)     All checks issued in accordance with the Plan of Allocation shall expire no later than one hundred twenty (120) calendar days after their issue date. All checks that are undelivered or are not cashed before their expiration date shall revert to the Qualified Settlement Fund, which limitation shall be printed on the face of each check. The voidance of checks shall have no effect on Class Members' release of claims, obligations, representations, or warranties as provided herein, which shall remain in full effect.

5.5     Notice of completion of Plan of Allocation. Within ten (10) business days of completing all aspects of the Plan of Allocation, the Settlement Administrator shall provide written notice of its implementation of the Plan of Allocation to Class Counsel and Defendants' Counsel. Such notice shall provide, in reasonable detail, a summary of the steps taken to implement the Plan of Allocation.

5.6     Disbursement of undistributed monies from the Qualified Settlement Fund. No sooner than one hundred and fifty (150) calendar days following the last date on which any check was mailed pursuant to Section 5.4(d), any portion of the Qualified Settlement Fund remaining after distributions have been made, including Administrative Expenses, taxes and tax expenses, Attorneys' Fees and Expenses, any Incentive Awards, and any other Court-approved deductions, shall be paid to the Plan for the purpose of defraying administrative fees and expenses of the Plan.

5.7     Responsibility for taxes. Each Class Member who receives a payment pursuant to the Settlement Agreement shall be fully and ultimately responsible for payment of any and all federal, state or local taxes resulting from or attributable to the payment received by such person. Each Class Member shall hold Defendants, Defendants' Counsel, Released Defendant Parties, Plaintiffs' Counsel, and the Settlement Administrator harmless from (a) any tax liability, including without limitation penalties and interest, related in any way to payments or credits under the Settlement Agreement, and (b) the costs (including, without limitation, fees, costs and expenses of attorneys, tax advisors, and experts) of any proceedings (including, without limitation, any investigation, response, and/or suit), related to such tax liability.

## ARTICLE VI

## PROSPECTIVE RELIEF

6.1     Before the expiration of the current recordkeeping agreement for the Plan, Cerner will issue a request for proposal for recordkeeping services for the Plan.

16

6.2     For a period of no less than three (3) years beginning no later than sixty (60) days following the Effective Date of the Settlement:

(a)     No Cerner employee employed within the Company's Investment Relations function shall serve on the Retirement Plan Committee; and

(b)     Cerner shall cause the Plan's recordkeeper to send an annual notice to all Plan participants reminding participants about the benefits of diversification. The Notice will also include a link to an on-demand workshop that, among other things, discusses the importance of asset allocation and diversification in retirement accounts.

## ARTICLE VII

### ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARDS

7.1     <u>Attorneys' Fees and Expenses.</u> No later than fourteen (14) days prior to the deadline provided in the Preliminary Approval Order for Class Members to object to the Settlement Agreement, Class Counsel may file an application with the Court for payment of their reasonable Attorneys' Fees and Expenses, to be deducted from the Gross Settlement Amount. Notwithstanding anything herein, the Court's failure to approve, in whole or in part, any application for Attorneys' Fees and Expenses sought by Class Counsel shall not prevent the Settlement Agreement from becoming effective, nor shall it be grounds for termination of the Settlement.

7.2     <u>Incentive Awards.</u> No later than fourteen (14) days prior to the deadline provided in the Preliminary Approval Order for Class Members to object to the Settlement Agreement, Class Counsel may file an application with the Court for payment of Incentive Awards to Plaintiffs other than Joshua Clark, in an amount not to exceed ten thousand U.S. dollars (USD $10,000.00) each. Class Counsel may file an application for payment of Incentive Awards to Joshua Clark up to twelve thousand dollars (USD $12,000) in recognition of his additional participation in this litigation, including but not limited to his personal participation in a day-long mediation. Notwithstanding anything herein, the Court's failure to approve, in whole or in part, any application for an Incentive Award to Plaintiffs shall not prevent the Settlement Agreement from becoming effective, nor shall it be grounds for termination of the Settlement.

7.3     <u>Payment of Attorneys' Fees and Expenses and Incentive Awards.</u>
Attorneys' Fees and Expenses and Incentive Awards shall be paid from the Escrow Account upon the Court's granting final approval of the Settlement and upon award of such Attorneys' Fees and Expenses and Incentive Awards by the Court notwithstanding any objections or appeals of the Settlement or the requested fee and expense award. If the Settlement is terminated pursuant to the terms of this Settlement Agreement or, if as a result of any appeal or further proceedings on remand, or successful collateral attack, the award of Attorneys' Fees and Expenses and/or Incentive Award is reduced or reversed, Class Counsel shall make the appropriate refund or repayment, along with interest at the same rate of interest earned by the Qualified Settlement Fund, in full no later than twenty (20) days after (a) receiving notice of a termination of the Settlement, or (b) any order reducing or reversing the award of Attorneys' Fees and Expenses and/or Incentive Award, becoming final.

17

## ARTICLE VIII

### RELEASES AND COVENANT NOT TO SUE

8.1 <u>Releases.</u> Subject to Article X below, the obligations incurred pursuant to this Settlement Agreement shall be in full and final disposition and settlement of any and all of Plaintiffs' Released Claims.

(a) Upon the Effective Date, Plaintiffs and every Class Member on behalf of themselves, their heirs, executors, administrators, successors, and assigns, and the Plan (subject to Independent Fiduciary approval as described in Section 2.2) shall, with respect to each and every Plaintiffs' Released Claim, be deemed to fully, finally and forever release, relinquish and forever discharge each and every Plaintiffs' Released Claim (including Unknown Claims) against any and all of the Released Defendant Parties, and forever shall be enjoined from prosecuting any such Plaintiffs' Released Claim.

(b) Upon the Effective Date, Defendants, on behalf of themselves and their successors and assigns shall, with respect to each and every Defendants' Released Claim, be deemed to fully, finally and forever release, relinquish and forever discharge each and every Defendants' Released Claim (including Unknown Claims), and forever shall be enjoined from prosecuting any such Defendants' Released Claim.

(c) Nothing herein shall preclude any action to enforce the Settlement Agreement.

8.2 <u>Covenant not to sue.</u> As of the Effective Date, Plaintiffs, the Class Members and the Plan (subject to Independent Fiduciary approval as described in Section 2.2) acting individually or together, or in combination with others, shall not sue or seek to institute, maintain, prosecute, argue, or assert in any action or proceeding (including but not limited to a U.S. Internal Revenue Service determination letter proceeding, a U.S. Department of Labor proceeding, an arbitration, or a proceeding before any state insurance or other department or commission), any cause of action, demand, or claim adverse to Released Parties on the basis of, in connection with, relating to, or arising out of any of Plaintiffs' Released Claims. Nothing herein shall preclude any action to enforce the Settlement Agreement.

### ARTICLE IX

### REPRESENTATIONS AND WARRANTIES

9.1 <u>Parties' representations and warranties.</u> The Parties represent and warrant as follows, and each Party acknowledges that each other Party is relying on these representations and warranties in entering into the Settlement Agreement:

(a) that they are voluntarily entering into the Settlement Agreement as a result of arm's-length negotiations, and that in executing this Settlement Agreement they are relying solely upon their own judgment, belief, and knowledge, and upon the advice and recommendations of counsel, concerning the nature, extent, and duration of their rights and claims hereunder and regarding all matters that relate in any way to the subject matter hereof;

18

(b)    that they assume the risk of mistake as to facts or law;

(c)    that they recognize that additional evidence may come to light, but that they nevertheless desire to avoid the expense and uncertainty of litigation by entering into the Settlement Agreement;

(d)    that they have carefully read the contents of the Settlement Agreement, and the Settlement Agreement is signed freely by each individual executing the Settlement Agreement on behalf of each Party; and

(e)    that they have made such investigation of the facts pertaining to the subject matter of the Settlement Agreement as they deem necessary.

9.2    Signatories' representations and warranties.  The persons executing the Settlement Agreement represent that they have been duly authorized to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Settlement Agreement in order to effectuate its terms.

## ARTICLE X

## TERMINATION

10.1    Right to terminate by each Party.  Each Party shall have the right to terminate and abandon the Settlement Agreement by providing written notice of their election to do so to the other Party no later than fourteen (14) calendar days after:

(a)    the Court declines to approve the Settlement Agreement or any material part of it;

(b)    the Court declines to enter the Preliminary Approval Order or materially modifies the contents of the Preliminary Approval Order;

(c)    the Court declines to enter the Final Approval Order or materially modifies the contents of the Final Approval Order; or

(d)    the Final Approval Order is vacated, reversed, or modified in any material respect on any appeal or other review or in a collateral proceeding occurring prior to the Effective Date.

Notwithstanding anything herein, no order of the Court, or modification or reversal on appeal of any order of the Court, solely concerning Attorneys' Fees and Expenses or any Incentive Awards shall constitute grounds for termination of the Settlement Agreement.

10.2    Right to terminate by Defendants.  Defendants (and only Defendants) shall have the right to terminate and abandon the Settlement Agreement in the event that the Independent Fiduciary disapproves or otherwise does not authorize the Settlement Agreement or refuses to approve the Plan's release of Plaintiffs' Released Claims.  In such an event, no later than fourteen (14) calendar days after receipt of the Independent Fiduciary's determination,

19

Defendants shall provide written notice to Plaintiffs of (a) their election to exercise their right to terminate and abandon the Settlement Agreement, or (b) their election to waive that right.

10.3    Right to terminate by Plaintiffs.  Plaintiffs shall have the right to terminate and abandon the Settlement Agreement in the event that the Defendants fail to fund the Settlement in accordance with Section 4.2.

10.4    Reversion to prior positions.  If the Settlement Agreement is terminated in accordance with this Article, then the Parties and Class Members will be restored to their respective positions immediately before the execution of the Settlement Agreement, the Action shall proceed in all respects as if the Settlement Agreement and any related orders had not been entered, any order entered by the Court pursuant to the terms of this Settlement Agreement shall be treated as vacated *nunc pro tunc*, the fact of this Settlement Agreement and the terms contained herein shall not be admissible in any proceeding for any purpose, and the Parties expressly and affirmatively reserve all claims, remedies, defenses, arguments, and motions as to all claims and requests for relief that might have been or might be later asserted in the Action.

## ARTICLE XI

## NO ADMISSION OF WRONGDOING

11.1    The Settlement Agreement, whether or not consummated, and any proceedings taken pursuant to it, is for settlement purposes only and entered into solely for the purpose of avoiding possible future expenses, burdens, or distractions of litigation, and Defendants and the Released Parties deny any and all wrongdoing.  Defendants and the Released Parties specifically and expressly deny any and all liability in connection with any claims which have been made or could have been made, or which are the subject matter of, arise from, or are connected, directly or indirectly, with or related in any way to the Action, including, but not limited to, any violation of any federal or state law (whether statutory or common law), rule, or regulation, and Defendants and the Released Parties deny that any violation of any such law, rule, or regulation has ever occurred.

11.2    Based upon their investigation, prosecution, and mediation of the case, Plaintiffs and Class Counsel have concluded that the terms and conditions of this Settlement Agreement are fair, reasonable, and adequate to Plaintiffs and the Class, and in their best interests.  The Settlement Agreement shall in no event be construed or deemed to be evidence of or an admission or concession on the part of Plaintiffs of any infirmity in any of the claims asserted in the Action, or an admission or concession that any of Defendants' defenses to liability had any merit.

11.3    The Settlement Agreement, whether or not consummated, and any negotiations, proceedings, or agreements relating to the Settlement Agreement, and any matters arising in connection with settlement negotiations, proceedings, or agreements:

(a)    shall not be offered or received against Defendants, or any of the Released Parties as evidence of, or be construed as or deemed to be evidence of, any presumption, concession, or admission by Defendants or a Released Party of the truth of any fact

20

alleged by Plaintiffs or the validity of any claim that has been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault, or wrongdoing on the part of Defendants or any of the Released Parties, or the appropriateness of certifying a non-settlement class;

(b)     shall not be offered or received against Defendants or any of the Released Parties as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by Defendants or any of the Released Parties;

(c)     shall not be offered or received against Defendants or any of the Released Parties as evidence of a presumption, concession, or admission with respect to any liability, negligence, fault, or wrongdoing, or in any way referred to for any other reason as against Defendants or any of the Released Parties, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Settlement Agreement; provided, however, that if this Settlement Agreement is approved by the Court, Defendants or the Released Parties may refer to it to effectuate the liability protection granted to them hereunder; and

(d)     shall not be construed against Defendants or any of the Released Parties as an admission or concession that the consideration to be given hereunder represents the amount which could or would have been recovered after trial of the Action.

## ARTICLE XII

### MISCELLANEOUS

12.1     Exhibits included.  The exhibits to the Settlement Agreement are integral parts of the Parties' agreement and are incorporated by reference as if set forth herein.

12.2     Cooperation.  Class Counsel and Defendants' Counsel agree to cooperate fully with one another in seeking Court entry of the Preliminary Approval Order and Final Approval Order.

12.3     Entire agreement.  This Settlement Agreement and all of the exhibits appended hereto constitute the entire agreement of the Parties with respect to their subject matter and supersede any prior agreement, whether written or oral, as to that subject matter.  No representations or inducements have been made by any Party hereto concerning the Settlement Agreement or its exhibits other than those contained and memorialized in such documents.  The provisions of the Settlement Agreement and its exhibits may not be modified or amended, nor may any of their provisions be waived, except by a writing signed by all Parties hereto or their successors-in-interest.

12.4     Waiver.  The waiver by any Party of a breach of the Settlement Agreement by any other Party shall not be deemed a waiver of any other breach of the Settlement Agreement.

21

12.5    Construction of agreement.  This Settlement Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that the Settlement Agreement is the result of arm's-length negotiations between the Parties and all Parties have contributed substantially and materially to its preparation.

12.6    Headings.  The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

12.7    Governing law.  The Settlement Agreement and all documents necessary to effectuate it shall be governed by the internal laws of the State of Missouri without regard to its conflict of law doctrines, except to the extent that federal law requires that federal law govern, and except that all computations of time with respect to the Settlement Agreement shall be governed by Federal Rule of Civil Procedure 6.

12.8    Fees and expenses.  Except as otherwise expressly set forth herein, each Party shall pay all fees, costs, and expenses incurred in connection with the Action, including fees, costs, and expenses incident to the negotiation, preparation, or compliance with the Settlement Agreement, and including any fees, expenses, and disbursements of its counsel and other advisors.  Nothing in the Settlement Agreement shall require Defendants to pay any monies other than as expressly provided herein.

12.9    Execution in counterparts.  The Settlement Agreement may be executed in one or more counterparts and may be executed by facsimile signature.  All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties shall exchange among themselves signed counterparts.

12.10   Notices.  Unless otherwise provided herein, any notice, demand, or other communication under the Settlement Agreement (other than Notices to Class Members or other notices provided at the direction of the Court) shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth below and delivered by hand, sent by registered or certified mail postage prepaid, or delivered by reputable express overnight courier as follows:

(a)    if to Plaintiffs:

Mark K. Gyandoh
CAPOZZI ADLER, P.C.
312 Old Lancaster Road
Merion Station, Pennsylvania 19066

Scott C. Nehrbass
FOULSTON SIEFKIN LLP
32 Corporate Woods, Suite 600
9225 Indian Creek Parkway
Overland Park, Kansas 66210

22

        (b)    if to Defendants:

                Michael S. Hines
                SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                500 Boylston Street
                Boston, Massachusetts 02116

                Scott C. Hecht
                STINSON LLP
                1201 Walnut Street, Suite 2900
                Kansas City, Missouri 64106

        12.11  <u>Retention of jurisdiction.</u>  The Parties shall request that the Court retain jurisdiction of this matter after the Effective Date and enter such orders as are necessary or appropriate to effectuate the terms of the Settlement Agreement.

AGREED TO ON BEHALF OF PLAINTIFFS Barbara Jane Freck, Gloria Robinson, Jaleeza Owens, Lynn Muserelli, Paul Capello, Jim Helton, and Joshua Clark, individually and as Class Representatives.

Dated: _____2/17/2021_____ By: _____

Mark K. Gyandoh
CAPOZZI ADLER, P.C.
312 Old Lancaster Road
Merion Station, Pennsylvania 19066


Dated: _____ By: _____

Scott C. Nehrbass
FOULSTON SIEFKIN LLP
32 Corporate Woods, Suite 600
9225 Indian Creek Parkway
Overland Park, Kansas 66210

AGREED TO ON BEHALF OF DEFENDANTS Cerner Corporation, Compensation Committee of the Cerner Corporation Board of Directors, Cerner Corporation Foundations Retirement Plan Administrative and Investment Committee.

Dated: _____2/17/2021_____ By: _____

Daniel P. Devers
CERNER CORPORATION
2800 Rockcreek Parkway
North Kansas City, MO 64117

24

AGREED TO ON BEHALF OF PLAINTIFFS Barbara Jane Freck, Gloria Robinson, Jaleeza Owens, Lynn Muserelli, Paul Capello, Jim Helton, and Joshua Clark, individually and as Class Representatives.

Dated: _____     By: _____

Mark K. Gyandoh
CAPOZZI ADLER, P.C.
312 Old Lancaster Road
Merion Station, Pennsylvania 19066

Dated: **2/17/2021**     By: _____

Scott C. Nehrbass
FOULSTON SIEFKIN LLP
32 Corporate Woods, Suite 600
9225 Indian Creek Parkway
Overland Park, Kansas 66210

AGREED TO ON BEHALF OF DEFENDANTS Cerner Corporation, Compensation Committee of the Cerner Corporation Board of Directors, Cerner Corporation Foundations Retirement Plan Administrative and Investment Committee.

Dated: 2/17/2021     By: _____

Daniel P. Devers
CERNER CORPORATION
2800 Rockcreek Parkway
North Kansas City, MO 64117

24

EXHIBIT A

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI**

## If you are or were a participant in the Cerner Corporation Foundations Retirement Plan (the "Plan") at any time from January 21, 2014 to the present, you are a part of a class action settlement.[1]

IMPORTANT
PLEASE READ THIS NOTICE CAREFULLY
THIS NOTICE RELATES TO THE PENDENCY OF TWO CLASS ACTION LAWSUITS
AND, IF YOU ARE A SETTLEMENT CLASS MEMBER, CONTAINS IMPORTANT
INFORMATION ABOUT YOUR RIGHTS TO OBJECT TO THE SETTLEMENT

*A Federal Court authorized this notice.  You are not being sued.*
*This is not a solicitation from a lawyer.*

- A Settlement has been reached in a class action lawsuit against Cerner Corporation and two Cerner-associated committees (collectively, "Cerner").[2]  The class action lawsuit involves whether Cerner complied with its fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA") in managing the Plan.

- You are included as a Class Member if you are or were a Plan participant at any time from January 21, 2014 until _____, the date the Settlement was preliminarily approved by the Court (the "Class Period").

- Cerner has agreed to pay $4,050,000.00 into a settlement fund.  Class Members are eligible to receive a pro rata share of the Net Settlement Fund, which is the amount in the settlement fund remaining after payment of administrative expenses, taxes, tax expenses, any attorneys' fees and expenses that the Court awards to Plaintiffs' lawyers, and any incentive awards to Plaintiffs.  The amount of each Class Member's payment is based on a Plan of Allocation that takes into account each Class Member's investments in the Plan.  Payments to current Plan participants will be deposited into their respective Plan accounts.  Payments to former Plan participants will be made directly to former Plan participants by check, or

---

[1]  All capitalized terms used in this Notice that are not otherwise defined herein shall have the meanings provided in the Settlement Agreement dated February 17, 2021 (the "Settlement Agreement").

[2]  The named defendants in the lawsuits are Cerner Corporation, the Compensation Committee of the Cerner Corporation Board of Directors, and the Cerner Corporation Foundations Retirement Plan Administrative and Investment Committee.

- 1 -

former Plan participants can instead elect to receive their payment through a rollover to a qualified retirement account.

- Please read this notice carefully. Your legal rights are affected whether you act or don't act.

| THIS TABLE CONTAINS A SUMMARY OF<br>YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **OBJECT BY [DATE]** | You may write to the Court if you don't like the Settlement to explain why you object. |
| **ATTEND A HEARING** | You may ask to speak in Court about the fairness of the Settlement. |
| **DO NOTHING** | You will get a share of the Settlement benefits to which you are entitled and will give up your rights to sue Cerner about the allegations in this case. |

## BASIC INFORMATION

### 1. What is this notice and why should I read it?

A court authorized this notice to let you know about a proposed settlement of a class action lawsuit called *Freck, et al. v. Cerner Corporation, et al.*, Civil Action No. 4:20-cv-00043-BCW (the "Action"), brought on behalf of the Class Members, and pending in the United States District Court for the Western District of Missouri. You need not live in Missouri to get a benefit under the Settlement. This notice describes the Settlement. Please read this notice carefully to determine whether you wish to participate in the Settlement. Your rights and options – **and the deadlines to exercise them** – are explained in this notice. Please understand that if you are a Class Member, your legal rights are affected regardless of whether you act.

### 2. What is a class action lawsuit?

A class action is a lawsuit in which one or more plaintiffs – in this case current and former Plan participants – sue on behalf of a group of people who allegedly have similar claims. After the Parties reached an agreement to settle this case, the Court granted preliminary approval of the Settlement. Among other things, this preliminary approval permits Class Members to voice their support for or opposition to the Settlement before the Court makes a final determination as to whether to approve the Settlement. In a class action, the court resolves the issues for all class members.

- 2 -

# THE CLAIMS IN THE LAWSUITS AND THE SETTLEMENT

| 3. | What is the lawsuit about? |
|----|----------------------------|

Plaintiffs filed a class action complaint against Defendant Cerner and the other Defendants on behalf of a class of Plan participants alleging that Cerner breached its fiduciary duties under ERISA in connection with the selection and monitoring of certain of the Plan's investment options. Specifically, Plaintiffs alleged that Defendants breached their fiduciary duties by (1) offering and retaining unduly expensive investment options in the Plan and (2) paying excessive administrative fees for the Plan. After the lawsuit was filed, another class action lawsuit was filed on April 14, 2020 in Kansas by Plaintiff Joshua Clark titled *Clark v. Cerner Corporation, et al.,* Civil Action No. 2:20-cv-02194-EFM-TJJ, ECF No. 1. In addition to alleging the claims in the first lawsuit, Mr. Clark alleged Defendants breached their ERISA fiduciary duties by concentrating the Plan's investments in Cerner stock. Mr. Clark voluntarily dismissed his lawsuit on January 15, 2021, but this Settlement encompasses his claims and Mr. Clark is a Class Representative in this Settlement. A more complete description of what Plaintiffs allege is in the Second Amended Complaint, which is available on the Settlement Website at [www.CernerERISASettlement.com].

Cerner denies Plaintiffs' claims of wrongdoing or liability against it and asserts that its conduct was lawful. Cerner is settling the Action solely to avoid the expense, inconvenience, and inherent risk and disruption of litigation.

| 4. | Why is there a Settlement? |
|----|----------------------------|

The Court has not decided in favor of either side in the case. Instead, both sides agreed to a settlement. In a settlement, both sides avoid the cost and risk of a trial, and the affected current and former Plan participants will get benefits that they would not have received if Plaintiffs had litigated the case and lost. The Plaintiffs and their attorneys think the Settlement is in the best interests for everyone who participated in the Plan during the Class Period. Cerner denies Plaintiffs' claims of wrongdoing. Cerner is settling the Action solely to avoid the expense, inconvenience, and inherent risk and disruption of litigation.

# WHO'S INCLUDED IN THE SETTLEMENT?

| 5. | How do I know if I am in the Class? |
|----|-------------------------------------|

The Court decided that everyone who fits this description is a member of the **Class**:

> All persons who were participants in or beneficiaries of the Plan at any time from January 21, 2014 to the date the Settlement was preliminarily approved by the Court, which is _____.

The Court has excluded from the Class: Defendants and any individuals who were members of the Compensation Committee or the Retirement Plan Committee from January 21, 2014, through the date of the Settlement Agreement.

If you meet the definition above, you are a member of the Class.

# THE SETTLEMENT BENEFITS

| 6. | What does the Settlement provide? |
|---|---|

Cerner has agreed to pay $4,050,000.00 to Class Members. That amount, less amounts for expenses associated with administering the Settlement, the Independent Fiduciary (not to exceed $25,000), taxes, tax expenses, as well as attorneys' fees, litigation expenses, and incentive awards to Plaintiffs (the latter three categories of which must be approved by the Court), is the "Net Settlement Fund." (*See* Question Nos. 9-10.) The Net Settlement Fund will be allocated to Class Members in accordance with a Plan of Allocation that is based on his or her Plan account balance that is invested in one or more of the Disputed Investments.

Calculation of payments to individual Class Members. Payments to each Class Member shall be calculated by the Settlement Administrator as follows, based on information provided by the Recordkeeper:

      (a)     For each Class Member, the Settlement Administrator shall determine a *Settlement Allocation Score*. A Class Member's *Settlement Allocation Score* shall be the aggregate of his or her quarter-ending account balance measured in points such that each dollar invested in the Disputed Investments[3] equals four (4) points, and each dollar invested in the Non-Disputed Investments[4] equals one (1) point. A Class Member's *Average Settlement Allocation Score* shall be the average of his or her *Settlement Allocation Scores* during the Class Period,

---

[3]   The Disputed Investments, as defined in the Settlement Agreement, means the following Plan investment options at issue in the Complaints: ABF Large Cap Value; American Century Government Bond R5; American Century Ultra IS; Cerner Corporate Stock; Fidelity 500 Index; Fidelity Government MM; Fidelity International Small Cap Opportunity; TRP Overseas Stock I; TRP Retirement 2005; TRP Retirement 2010; TRP Retirement 2015; TRP Retirement 2020; TRP Retirement 2025; TRP Retirement 2030; TRP Retirement 2035; TRP Retirement 2040; TRP Retirement 2045; TRP Retirement 2050; TRP Retirement 2055; TRP Retirement 2060; and Western Asset Core Bond I.

[4]   The Non-Disputed Investments, as defined in the Settlement Agreement, means any and all investment options offered by the Plan other than the Disputed Investments.

weighted by the percentage of days in the quarter for partial quarters at the beginning of the Class Period.[5]

(b) The Settlement Administrator shall determine the total settlement payment available to each Class Member by calculating each such Class Member's pro rata share of the Net Settlement Fund based on his or her *Settlement Allocation Score* compared to the sum of the *Settlement Allocation Scores* for all Class Members. If the dollar amount of the settlement payment to a Class Member is calculated by the Settlement Administrator to be less than $2.00, then that Class Member's payment or pro rata share shall be zero for all purposes.

If you are a Class Member (*see* Question No. 5) and you are currently a Plan participant, your payment will be deposited into your Plan account in accordance with your investment elections for new contributions. If you have not made any such elections, your payment will be invested in the Plan's qualified default investment alternative.

If you are a beneficiary entitled to receive payments on behalf of a Class Member (a "Beneficiary"), you will receive your payment under the Settlement directly in the form of a check. If you are an alternate payee entitled to receive payments on behalf of a Class Member pursuant to a Qualified Domestic Relations Order (an "Alternate Payee"), you will receive your payment of the Settlement (pursuant to the terms of your Qualified Domestic Relations Order) directly in the form of a check.

If you are a Class Member and you ***previously*** participated in the Plan but no longer do so (or you are a Beneficiary or an Alternate Payee of such a Class Member), then you will receive a payment under the Settlement directly in the form of a check. You do not have to submit a claim to receive a payment under the Settlement. ***If, however, you would prefer to receive your settlement payment through a rollover to a qualified retirement account, you must complete, sign, and mail the enclosed Former Participant Rollover Form by [10 DAYS BEFORE FAIRNESS HEARING].***

# HOW TO GET BENEFITS

**7.      How do I get benefits?**

Class Members do not have to submit claim forms in order to receive settlement benefits.

The benefits of the Settlement will be distributed automatically once the Court approves the Settlement, either to Class Members' Plan accounts (for current Plan participants) or by check (for former Plan participants, and eligible Beneficiaries and Alternate Payees of Class Members). (*See* Question No. 6.)      **Former Plan participants who would prefer to receive their settlement**

---

[5]    The mathematical calculation used to determine each *Settlement Allocation Score* is set forth more fully in the Settlement Agreement and on the Settlement Website.

payment through a rollover to a qualified retirement account must complete, sign, and mail the enclosed **Former Participant Rollover Form by [10 DAYS BEFORE FAIRNESS HEARING]**. Former Plan participants who fail to complete, sign, and mail their Former Participant Rollover Form will receive their Settlement distribution by check.

| **8.** | **When will I get my payment?** |
|---|---|

If you are a current Plan participant, then you will receive your pro rata share of the Net Settlement Fund in the form of a deposit into your Plan account effective no later than forty (40) days after the Settlement has received final approval and/or after any appeals have been resolved in favor of the Settlement. The hearing to consider the final fairness of the Settlement is scheduled for [___, 2021].

Any eligible Beneficiaries or Alternate Payees will receive their payment under the Settlement in the form of a check issued within forty (40) days after the Settlement has received final approval and/or after any appeals have been resolved in favor of the Settlement.

If you are a former Plan participant (or a Beneficiary or Alternate Payee of such participant) who timely submits a Former Participant Rollover Form, the Settlement Administrator will effect a rollover of your pro rata share of the Net Settlement Fund to your qualified retirement account selected in that form within forty (40) days after the Settlement has received final approval and/or after any appeals have been resolved in favor of the Settlement. If you are a former Plan participant (or a Beneficiary or Alternate Payee of such participant) who does not submit a Former Participant Rollover Form, a check in the amount of your pro rata share of the Net Settlement Fund will be issued to you within forty (40) days after the Settlement has received final approval and/or after any appeals have been resolved in favor of the Settlement.

These payments may have certain tax consequences; you should consult your tax advisor.

# THE LAWYERS REPRESENTING YOU

| **9.** | **Who represents the Settlement Class?** |
|---|---|

For purposes of the Settlement, the Court has appointed lawyers from the law firms of Capozzi Adler, P.C. and Foulston Siefkin LLP as Class Counsel and Plaintiffs' Counsel. If you want to be represented by your own lawyer, you may hire one at your own expense. In addition, the Court appointed Plaintiffs Barbara Jane Freck, Gloria Robinson, Jaleeza Owens, Lynn Muserelli, Paul Capello, Jim Helton, and Joshua Clark to serve as the Class Representatives. They are also Class Members.

Subject to approval by the Court, Class Counsel has proposed that Incentive Awards be paid to Plaintiffs other than Joshua Clark, in an amount not to exceed ten thousand U.S. dollars (USD $10,000.00) each in recognition of time and effort they expended on behalf of the Class. Class Counsel proposes payment of an Incentive Award to Joshua Clark up to twelve thousand dollars

- 6 -

(USD $12,000) in recognition of his additional participation in this litigation, including but not limited to his personal participation in a day-long mediation. The Court will determine the proper amount of any award to Plaintiffs. The Court may award less than that amounts requested.

| 10. | How will the lawyers be paid? |
|---|---|

From the beginning of these cases to the present, Class Counsel have not received any payment for their services in prosecuting the cases or obtaining the Settlement, nor have they been paid for any litigation expenses they have incurred. Class Counsel will apply to the Court for an award of attorneys' fees not to exceed 33 and 1/3% of the $4,050,000.00 settlement amount plus their litigation expenses incurred in the prosecution of the cases. This number equates to $1,350,000.00. The Court will determine the proper amount of any attorneys' fees and expenses to award Class Counsel.

Any attorneys' fees and expenses awarded by the Court will be paid to Class Counsel from the $4,050,000.00 settlement fund. Class Members will not have to pay anything toward the fees or expenses of Class Counsel.

# INDEPENDENT FIDUCIARY

| 11. | Will the Settlement be reviewed by anyone other than the Court? |
|---|---|

Yes. Cerner has, in consultation with Class Counsel, selected and retained an experienced Independent Fiduciary to review the Settlement on behalf of the Plan and determine whether to authorize the Plan to release the claims against Defendants and whether it is necessary to file an objection to the Settlement. As an impartial third party, the Independent Fiduciary will review the Action and the Settlement, including the claims alleged against Defendants, the terms of the Settlement, the Plan of Allocation of Settlement proceeds, and the request for attorneys' fees and expenses. The Independent Fiduciary will submit its findings to the Parties in a written report, which will be filed with the Court at least thirty (30) calendar days before the Fairness Hearing.

# YOUR RIGHTS AND OPTIONS

| 12. | What is the effect of final approval of the Settlement? |
|---|---|

If the Court grants final approval of the Settlement, a final order and judgment dismissing the case will be entered in the Action. Payments under the Settlement will then be processed and distributed. The release by Class Members will also take effect. All members of the Class will release and forever discharge Cerner and each of the Released Defendant Parties from any and all Plaintiffs' Released Claims (as defined in the Settlement Agreement). Please refer to Article I of the Settlement Agreement for a full description of the claims and persons that will be released upon final approval of the Settlement.

- 7 -

No Class Member will be permitted to continue to assert Plaintiffs' Released Claims in any other litigation against Cerner or the other persons and entities covered by the release. If you object to the terms of the Settlement Agreement, you may notify the Court of your objection. (*See* Table on page 2 of this Notice.) If the Settlement is not approved, the case will proceed as if no settlement had been attempted or reached.

If the Settlement is not approved and the case resumes, there is no assurance that members of the certified class will recover more than is provided for under the Settlement, or anything at all.

| **13.** | **What happens if I do nothing at all?** |

If you do nothing, you will release any claims you may have against Cerner or the Released Defendant Parties concerning the conduct Plaintiffs allege in their complaint. (*See* Question No. 14.) You may also receive a payment as described in Question No. 8.

| **14.** | **How do I get out of the Settlement?** |

If the Court approves the Settlement, you will be bound by it and will receive whatever benefits you are entitled to under its terms. You cannot exclude yourself from the Settlement, but you may notify the Court of your objection to the Settlement. (*See* Question No. 16.) If the Court approves the Settlement, it will do so under Federal Rule of Civil Procedure 23(b)(1), which does not permit Class Members to opt out of the Class.

| **15.** | **Can I sue Cerner for the same thing later?** |

No. If the Court approves the Settlement, you will have given up any right to sue Cerner and the Released Defendant Parties for the claims being resolved by this Settlement.

| **16.** | **How do I object to the Settlement?** |

You can object to the Settlement if you don't like any part of it. If you object, you must give the reasons why you think the Court should not approve the Settlement. The Court will consider your views. Your objection to the Settlement must be received no later than [DATE] and must be sent to the Court and the attorneys for the Parties at the addresses below:

| Court | Class Counsel | Defendants' Counsel |
|---|---|---|
| Clerk of the Court, Maggie Boyd<br>Charles Evans Whittaker<br>United States Courthouse<br>400 E. 9th Street<br>Kansas City, MO 64106 | Mark K. Gyandoh<br>CAPOZZI ADLER, P.C.<br>312 Old Lancaster Road<br>Merion Station, Pennsylvania 19066<br><br>Scott C. Nehrbass | Michael S. Hines<br>SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP<br>500 Boylston Street<br>Boston, MA 02116<br><br>Scott C. Hecht |

- 8 -

| | FOULSTON SIEFKIN LLP<br>32 Corporate Woods, Suite 600<br>9225 Indian Creek Parkway<br>Overland Park, Kansas 66210 | STINSON LLP<br>1201 Walnut Street, Suite 2900<br>Kansas City, Missouri 64106 |
|---|---|---|

You may also email your objections to attorneys for the parties to settlement@capozziadler.com. The objection must be in writing and include the case names *Freck, et al. v. Cerner Corporation, et al.*, Civil Action No. 4:20-cv-00043-BCW and *Clark v. Cerner Corporation, et al.*, Civil Action No. 2:20-cv-02194-EFM-TJJ; as well as include your (a) name; (b) address; (c) a statement that you are a member of the Class; (d) the specific grounds for the objection (including all arguments, citations, and evidence supporting the objection); (e) all documents or writings that you desire the Court to consider (including all copies of any documents relied upon in the objection); (f) your signature; and (g) a notice of intention to appear at the Fairness Hearing (if applicable). (If you are represented by counsel, you or your counsel must file your objection through the Court's CM/ECF system.) The objection must state whether it applies only to the objector, to a specific subset of the Class or to the entire Class. The Court will consider all properly filed comments from Class Members. If you wish to appear and be heard at the Fairness Hearing in addition to submitting a written objection to the Settlement, you or your attorney must say so in your written objection.

Class Counsel will file with the Court and post on the Settlement Website its request for attorneys' fees and expenses at least two weeks prior to [OBJECTION DEADLINE].

## THE COURT'S FAIRNESS HEARING

| **17.** | **When and where will the Court hold a hearing on the fairness of the Settlement?** |
|---|---|

A Fairness Hearing has been set for [DATE] at [TIME], before The Honorable Brian C. Wimes at the Charles Evans Whittaker United States Courthouse, 400 E. 9th Street, Kansas City, MO 64106 in [COURTROOM]. At the hearing, the Court will hear any comments, objections, and arguments concerning the fairness of the proposed Settlement, including the amount requested by Class Counsel for attorneys' fees and expenses and the incentive award to Plaintiffs as the Class Representatives. You do not need to attend this hearing. You also do not need to attend to have an objection considered by the Court. (*See* Question No. 18.)

**Note**: The date and time of the Fairness Hearing are subject to change by Court Order. **The Fairness Hearing may also take place via video or telephonically.** But any changes will be posted at [www.CernerERISASettlement.com].

| **18.** | **Do I have to attend the Fairness Hearing?** |
|---|---|

No. Class Counsel will answer any questions the Court may have. Keeping in mind the Fairness Hearing may take place remotely, you are welcome to attend at your own expense. If you send an

objection, you don't have to come to Court to talk about it. As long as any written objection you choose to make was filed and mailed on time and meets the other criteria described in the Settlement Agreement, the Court will consider it. You may also pay another lawyer to attend, but you don't have to.

| 19. | May I speak at the hearing? |
| --- | --- |

You may ask the Court for permission to speak at the hearing concerning any part of the proposed Settlement by following the instructions in Question No. 16 above.

# GETTING MORE INFORMATION

| 20. | Where can I get additional information? |
| --- | --- |

This notice provides only a summary of the matters relating to the Settlement. For more detailed information, you may wish to review the Settlement Agreement. You can view the Settlement Agreement and get more information at [www.CernerERISASettlement.com]. You can also get more information by calling toll-free [_____] or sending an email to settlement@capozziadler.com. The Settlement Agreement and all other pleadings and papers filed in the case are available for inspection and copying during regular business hours at the office of the Clerk of the Court, Maggie Boyd, located at the Charles Evans Whittaker United States Courthouse, 400 E. 9th Street, Kansas City, MO 64106. For a fee, all papers filed in the Action are available at www.pacer.gov. Cerner cannot give you more additional information on the settlement.

**PLEASE DO NOT CONTACT THE COURT, THE JUDGE, OR CERNER WITH QUESTIONS ABOUT THE SETTLEMENT.**

EXHIBIT B

**Cerner Corporation Foundations Retirement Plan Settlement Administrator**
**P.O. Box [number]**
**[City, State, ZIP]**
**[**www.CernerERISASettlement.com**]**

## FORMER PARTICIPANT ROLLOVER FORM

JOHN Q CLASSMEMBER                                          Claim Number: 1111111
123 MAIN ST APT 1
ANYTOWN, ST 12345

This Former Participant Rollover Form is **ONLY** for Class Members who are **Former Participants**, or the beneficiaries or alternate payees of Former Participants (all of whom will be treated as Former Participants).  A Former Participant is a Class Member who had a Plan account with a balance greater than $0.00 during the Class Period but does not have a Plan account with a balance greater than $0.00 as of the date of [PRELIMINARY APPROVAL ORDER].

Former Participants that would like to elect to receive their settlement payment through a rollover to a qualified retirement account must complete, sign, and mail this form with a postmark on or before [RETURN DATE SET FORTH IN PRELIMINARY APPROVAL ORDER].  Please review the instructions below carefully.  **Former Participants who do not complete and timely return this form will receive their settlement payment by a check.**  If you have questions regarding this form, you may contact the Settlement Administrator as indicated below:

[www.CernerERISASettlement.com] OR CALL [PHONE NUMBER]

************************************************************************************************************

## PART 1: INSTRUCTIONS FOR COMPLETING FORMER PARTICIPANT ROLLOVER FORM

1.  If you would like to receive your settlement payment through a rollover to a qualified retirement account, complete this rollover form.  You should also keep a copy of all pages of your Former Participant Rollover Form, including the first page with the address label, for your records.

2.  **Mail your completed Former Participant Rollover Form postmarked on or before** [RETURN DATE SET FORTH IN PRELIMINARY APPROVAL ORDER] **to the Settlement Administrator at the following address:**
    **Cerner Corporation Foundations Retirement Plan Settlement Administrator**
    **P.O. Box [number] [City, State, ZIP]**

    It is your responsibility to ensure the Settlement Administrator has timely received your Former Participant Rollover Form.

3.  Other Reminders:

    •   You must provide date of birth, signature, and a completed Substitute IRS Form W-9, which is attached as Part 5 to this form.

    •   If you desire to do a rollover and you fail to complete all of the rollover information in Part 4, below, payment will be made to you by check.

    •   If you change your address after sending in your Former Participant Rollover Form, please provide your new address to the Settlement Administrator.

**[FORMER PARTICIPANT ROLLOVER FORM CONTINUES ON THE NEXT PAGE]**

1

- **Timing of Payments to Eligible Class Members.**  The timing of the distribution of the Settlement payments are conditioned on several matters, including the Court's final approval of the Settlement and any approval becoming final and no longer subject to any appeals in any court.  An appeal of the final approval order may take several years.  If the Settlement is approved by the Court, and there are no appeals, the Settlement distribution likely will occur within three months of the Court's Final Approval Order.

4. **Questions?**  If you have any questions about this Former Participant Rollover Form, please call the Settlement Administrator at [PHONE NUMBER].  The Settlement Administrator will provide advice only regarding completing this form and will not provide financial, tax or other advice concerning the Settlement.  You therefore may want to consult with your financial or tax advisor.  Information about the status of the approval of the Settlement and the Settlement administration is available on the Settlement Website, [www.CernerERISASettlement.com].

You are eligible to receive a payment from a class action settlement.  The Court has preliminarily approved the class settlement of *Freck, et al. v. Cerner Corporation, et al.*, Civil Action No. 4:20-cv-00043-BCW, pending in the United States District Court for the Western District of Missouri.  That Settlement provides allocation of monies to the individual accounts of certain persons who participated in the Cerner Corporation Foundations Retirement Plan ("Plan") at any time between January 21, 2014 and the date of the preliminary approval of the class settlement by the court ("Class Members").  Class Members who had a Plan account with a balance greater than $0.00 during the Class Period but who do not have a Plan account with a balance greater than $0.00 as of the date of [DATE OF PRELIMINARY APPROVAL] ("Former Participants") will receive their allocations in the form of a check or in the form of a rollover if and only if they mail a valid Former Participant Rollover Form postmarked on or before [RETURN DATE SET FORTH IN PRELIMINARY APPROVAL ORDER] to the Settlement Administrator with the required information to effectuate the rollover.  For more information about the Settlement, please see the Notice Of Class Action Settlement And Fairness Hearing, visit [www.CernerERISASettlement.com], or call [PHONE NUMBER].

Because you are a Former Participant in the Plan, you must decide whether you want your payment (1) sent payable to you directly by check, or (2) to be rolled over into another eligible retirement plan or into an individual retirement account ("IRA").  To elect a rollover, please complete and mail this Former Participant Rollover Form postmarked on or before [RETURN DATE SET FORTH IN PRELIMINARY APPROVAL ORDER] to the Settlement Administrator.  If you do not return this form, your payment will be sent to you directly by check.

## PART 2: PARTICIPANT INFORMATION

First Name      Middle   Last Name

Mailing Address

City      State   Zip Code

Home Phone      Work Phone or Cell Phone

Participant's Social Security Number      Participant's Date of Birth

M M   D D   Y Y Y Y

Email Address

**[FORMER PARTICIPANT ROLLOVER FORM CONTINUES ON THE NEXT PAGE]**

2

## PART 3: BENEFICIARY OR ALTERNATE PAYEE INFORMATION (*IF APPLICABLE*)

☐ Check here if you are the **surviving spouse or other beneficiary** for the Former Participant and the Former Participant is deceased.  **Documentation must be provided showing current authority of the representative to file on behalf of the deceased**.  Please complete the information below and then continue on to Parts 4 and 5 on the next page.

☐ Check here if you are an alternate payee under a qualified domestic relations order (QDRO).  The Settlement Administrator may contact you with further instructions.  Please complete the information below and then continue on to Parts 4 and 5 on the next page.

First Name                                      Middle    Last Name

Mailing Address

City                                                                                    State    Zip Code

Home Phone                                      Work Phone or Cell Phone

Participant's Social Security Number             Participant's Date of Birth

Email Address                                    M M        D D      Y Y Y Y

**[FORMER PARTICIPANT ROLLOVER FORM CONTINUES ON THE NEXT PAGE]**

## PART 4: PAYMENT ELECTION

**Direct Rollover to an Eligible Plan** – Check only one box below and complete the Rollover Information Section below:

☐ Government 457(b)        ☐ 401(a)/401(k)        ☐ 403(b)

☐ Direct Rollover to a Traditional IRA        ☐ Direct Rollover to a Roth IRA (subject to ordinary income tax)

**Rollover Information:**

Company or Trustee's Name (to whom the check should be made payable)

Company or Trustee's Mailing Address 1

Company or Trustee's Mailing Address 2

Company or Trustee's City                                        State        Zip Code

Your Account Number                                        Company or Trustee's Phone Number

## PART 5: SIGNATURE, CONSENT, AND SUBSTITUTE IRS FORM W-9

UNDER PENALTIES OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA, I CERTIFY THAT ALL OF THE INFORMATION PROVIDED ON THIS FORMER PARTICIPANT ROLLOVER FORM IS TRUE, CORRECT, AND COMPLETE AND THAT I SIGNED THIS FORMER PARTICIPANT ROLLOVER FORM.

1. The Social Security number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and

3. I am a U.S. person (including a U.S. resident alien).

M M    D D    Y Y Y Y

_____

**Participant Signature**                                        **Date Signed** *(Required)*

Note: If you are subject to backup withholding, you must cross out item 2 above. The IRS does not require your consent to any provision of this document other than this Form W-9 certification to avoid backup withholding.

4

EXHIBIT 2

Mark K. Gyandoh, Esquire
*Partner*
[markg@capozziadler.com](mailto:markg@capozziadler.com)

## Career

Mark K. Gyandoh, Esq. who spearheads the firm's fiduciary practice group has nearly two decades of experience in complex civil litigation. Following graduation from law school he clerked for the Honorable Dennis Braithwaite of the Superior Court of New Jersey Appellate Division from 2001 to 2002 in Atlantic City. He then worked for a small insurance defense firm in Philadelphia for two years where he took and defended hundreds of depositions and tried numerous cases at arbitration. Toward the end of his tenure at the firm he also served as an arbitrator in the Compulsory Arbitration Program for the Philadelphia Court of Common Pleas.

Prior to joining Capozzi Adler, Mr. Gyandoh litigated breach of fiduciary duty class actions brought pursuant to the Employee Retirement Income Security Act of 1974 (ERISA) for fifteen years at one of the largest plaintiffs' class action firms in the country, Kessler Topaz Meltzer & Check, LLP. While at Kessler Topaz, Mr. Gyandoh prosecuted dozens of ERISA breach of fiduciary duty cases against some of the biggest companies in America recovering hundreds of millions of dollars for victims of fiduciary breaches. He has substantial experience in all phases of litigating these cases from initial investigation, filing pleadings, mediations, settlements, settlement administration, trial and appeals. Mr. Gyandoh was one of the lead attorneys for plaintiffs in an ERISA case that resulted in a seminal U.S. Supreme Court decision, *Fifth Third Bancorp, et al. v. Dudenhoeffer, et al.*, 134 S. Ct. 2459 (2014), that clarified the unwavering duties owed by fiduciaries to pension plan participants.

## Education

Mr. Gyandoh earned his B.A. in history from Haverford College in 1996. He obtained both his J.D. (2001) and L.L.M. (2011) in trial advocacy from Temple University School of Law. While in law school, Mr. Gyandoh was Co-President of the Temple International Law Society. He also served as an intern for the Honorable Dolores K. Sloviter, United States Court of Appeals for the Third Circuit, and extern for the Honorable Jerome B. Simandle, United States District Court for New Jersey. Mr. Gyandoh is also proud to have earned the title of Honorary Judge Advocate for his outstanding service as a legal intern for the United States Army South Office of the Staff Judge Advocate at Fort Buchanan, Puerto Rico during the summer of 2000.

## Positions and Accomplishments

Named a Rising Star by Super Lawyers, Mr. Gyandoh is admitted to both the Pennsylvania and New Jersey bars. He is also admitted to the United States Court of Appeals for the Second Circuit, United States Court of Appeals for the Sixth Circuit, United States Court of Appeals for the Eleventh Circuit, and the following United States District Courts: Eastern District of Pennsylvania, District of New Jersey, District of Colorado, Eastern District of Michigan, Northern District of Illinois, Central District of Illinois, and Southern District of Illinois.

Over the years, Mr. Gyandoh has contributed to academic scholarship in a variety of contexts reflecting his values and intellectual curiosity. While in law school, he received the Henry J. Richardson, III Award for his contribution of scholarship in the areas of international law and human rights. And in 2004, Mr. Gyandoh was invited to speak at a conference in Prague, Czech Republic where participants explored the role of ecology and environmental ideas in the

context of contemporary society, international politics and global economics, to begin to assess the implications for our understanding of fairness, justice and global citizenship. His presentation was published as an article titled *Incorporating the Principle of Co-Equal Branches into the European Constitution: Lessons to be Learned from the United States*, in "Redefining Europe," pp. 89-107 (2005). He also authored an article about overcoming legal hurdles in litigating cases outside the United States titled *Foreign Evidence Gathering: What Stands in the Way of Justice?* 15 Temp. Int'l & Comp. L.J. (2001)

Currently, Mr. Gyandoh also serves as President of the U.S. Ghana Chamber of Commerce, a Philadelphia-based organization.